## WEBBERS' EXECUTORS *vs.* UNDERHILL.

Where a verdict was rendered for a defendant in an action of replevin for part of the property in question and a new trial ordered, and the defendant died after such order for a new trial and previous to the next circuit, it was held that the executors of such defendant were not entitled to come in and ask that the suit be continued against them as defendants in the place of their testator.

The provision in the statute relative to proceedings by scire facias " to con-tinue a suit by or against the representatives of either party who shall have died in the progress thereof," does not authorize the suing out of a writ of scire facias in any cases other than those before known to the law.

DEMURRER to scire facias. The scire facias in this case was sued out under the following circumstances : Webbers, as sheriff of the county of Westchester, by virtue of two executions against one Caleb Underhill, levied upon a quan-tity of personal property. Richard M. Underhill claimed to be the owner of the property, and sued out a *writ of re-plevin.* Webbers *avowed* the taking under the executions. The issue upon the avowry was tried, and the jury found a verdict *as to part of the property* for the *plaintiff,* and *as to the residue* for the defendant. The value of the part found for the *plaintiff* was assessed by the jury at four hundred and fifty-four dollars, and the value of the property found for the *defendant* and the damages for the detention of the same were assessed at one thousand and forty-six dollars. The circuit judge, on the application of the plaintiff, granted a new trial, and *after* the order for a new trial and *previous* to the next circuit, the defendant Webbers died. His *executors* thereupon sued out a scire facias for the plaintiff to show cause why the action of replevin should not be con-*tinued by substituting them as defendants* in the place of Webbers. To this scire facias the plaintiff demurred.

*J. A. Spencer*, for the defendant here. At common law the action abated by the death of Webbers—*actio personalis moritur cum persona*, 2 Sell. Pr. 190, and this rule of law is not altered by the statute, 2 R. S. 576, § 2, which gives a *scire facias* " to continue a suit by or against the representatives of either party who shall have died in the progress thereof." If a literal construction be given to this provision, there is no longer such a thing as an *abatement* of a suit by the death of a party ; and, what would be most absurd, an action of *slander* may be continued *by* and *against* the representatives of a deceased party. This could not have been the intention of the legislature; their meaning, no doubt, must have been that the suit might be continued in all cases where they had declared that it should not abate, and not otherwise. *Replevin*, like every other action, abates by the death of a sole defendant. 2 Wilson, 83. 3 Mass. R. 328. 4 id. 480. 1 Pick. 284. 8 Greenl. 128. There is no hardship in the case, the defendants have only mistaken their remedy. 8 Greenl. 128.

*S. Stevens*, for the plaintiffs. Webbers, in the action of replevin, was but a *nominal* defendant, the *real* defendants were the plaintiffs in the executions under which he acted, and in whose favor the jury upon the first trial, found to the amount of upwards of one thousand dollars ; and if this *scire facias* be not sustained they are remediless, notwithstanding the suggestion to the contrary in 8 Greenl. 128. The general rule of *actio personalis moritur cum persona*, is not denied, but it is not applicable here. This is a proceeding *in rem*, and such proceeding does not abate by the death of a party. *Penhallow* v. *Doane's adm'rs*, 3 Dall. 86, 101, 118. Or it may be conceded to be *in rem et personam*, but what is *personal* is merely incidental, that is, the *damages* ; the action is brought for the *thing*, and the *damages* are a mere incident. Willes, 668. 6 East, 283; 2 Smith, 365, S. C. 2 W. Black. 1330. 16 Serg. & Rawle, 300. 6 id. 272. 1 Har. & John. 31. 2 Blackf. 416. 6 Halst. 179. In *Adams* v. *Rockwell*, 16 Wendell, 303, *replevin* was considered as a proceeding *in rem*, and on the reversal of the judgment for

the plaintiff, who had died, the court for the correction of errors directed the record to be remitted so that the suit might be reviewed against his representatives, and a *venire de novo* be issued. For wrongs done to the property of another, *an action* is given by statute against the executors or administrators of the wrong-doer, 2 R. S. 447, § 1 ; and as to the right to sue out a *scire facias* this case is within the very words of the statute, 2 R. S. 576, § 2, which read in connection with the provisions of the statute relative to the abatement of suits, 2 R. S. 386, § 2, 3, 4, clearly shows the intention of the legislature to extend the remedy beyond the cases specified in the sections last cited.

*By the Court*, COWEN, J.  The main question presented by this demurrer, seems to be rendered difficult rather by the apparent conflict of positive authority than upon principle. In *Keite* v. *Boyd*, 16 Serg. & Rawle, 300, it was held, in so many words, that replevin does not abate by the death of the defendant even before plea or avowry. The defendant's administrator was received, and himself pleaded to the action ; whereas, in *Cutfield* v. *Corney*, 2 Wils. 83, the death even of the plaintiff before avowry, (a much stronger case, we shall see, for continuing the action,) was held to work an abatement. *Duke of Ormond* v. *Bierly*, Carth. 519, S. P. The death of the defendant was said to have that effect in *Pitts* v. *Hale*, 3 Mass. R. 321, and this was distinctly adjudged as the sole point in *Mellen* v. *Baldwin*, 4 Mass. R. 480, and in effect by *Badlam* v. *Tucker*, 1 Pick. 284. These cases were acted upon and adopted as law in *Merritt* v. *Lumbert*, 8 Greenl. 128. It will be perceived that they bring replevin distinctly within the general rule of the common law, *actio personalis moritur cum persona*, as explained by Serjeant Williams in his note (1) to *Wheatly* v. *Lane*, 1 Saund. 216. This is emphatically so in respect to the person *by whom* the injury is committed ; for though replevin will lie by the personal representatives of the party injured, Gilb. Replev. 156, Lond. ed. 1794 ; *Pitts* v. *Hale*, 3 Mass. R. 321 ; Wilkins. on Replev. 5 ; and see *Fister* v. *Beall's adm'rs*, 1 Harr. & Johns. 31 ; yet it cannot be brought

even originally against those of the party who did the wrong, *Mellen* v. *Baldwin*, 4 Mass. R. 482, per Parsons, Ch. J. though doubtless his representatives would be liable individually for a wrongful detention of the specific goods which come to their hands. 2 Wms. Ex'r, 1065.

It is said the action of replevin is a proceeding *in rem*, and indeed it was so held in *Fletcher* v. *Wilkins*, 6 East, 283, more fully reported 2 Smith, 365. The court there denied the proceeding to be within a statute providing that no *action* should be brought against a constable, &c. until certain steps should be taken. *Milward* v. *Caffin*, 2 Wm. Black. 1330, and *Pearson* v. *Roberts*, Willes, 668, though the latter was questioned by a dictum of Lord Kenyon in *Harper* v. *Carr*, 7 T. R. 270, are cited as sustaining that view of the proceeding. It sounds strange to hear it said that replevin is not *an action*, but such is the course of English decisions. Willes, Ch. J. contended, in *Pearson* v. *Roberts*, that it was an action when commenced by writ, and so the court held. He showed that it has all the characteristics of an action, parties, pleadings, damages, costs, &c. and was so called in several statutes. He admitted that in case of a mandatory writ to the sheriff, or a plaint in the sheriff's court, which were merely to have the goods again, but no damages, the proceeding was *in rem*, and not an action. In *Milward* v. *Caffin*, the court, speaking of a writ say, this is an *action* of replevin, an *action in rem*. In *Fletcher* v. *Wilkins*, the distinction taken by Willes, Ch. J. was denied by Lord Ellenborough, Ch. J. and all replevins are declared to be proceedings *in rem*: for, says the chief justice, replevin is never brought for the *damages* only, but always goes for the *thing*. It is not necessary, for the purposes of the question before us, to decide whether replevin be an action for all purposes, though according to the common notion I should have thought it so, even within the words of the statute under consideration in the cases cited. The cases themselves, we have seen, call it *an action in rem*, and clearly it is so to a certain extent; but it never stops with that character. It has parties, as remarked by Willes, Ch. J.; and with us it uniformly seeks damages and costs for the wrongful taking

or detention. In the latter sense it comes directly within the principle laid down by ˌSerjeant Williams in the book before cited. Damages and costs for a tort, as such, could never be recovered against the executors or administrators of a wrong-doer, at the common law. As was well said by Stevens, J. in *Daggett* v. *Robbins,* 2 Blackf. 416, replevin " is in part a proceeding *in rem,* to regain possession of the goods and chattels, and in part a proceeding *in personam,* to recover damages." See also *Snedeker* v. *Quick,* 6 Halst. 178.

The consequence sought to be deduced from the character of replevin as a proceeding *in rem,* is that it never abates by the death of the defendant. This is said on the authority of *Penhallow* v. *Doane's adm'rs,* 3 Dall. 54, 86, 101, 118; but that doctrine holds only of a proceeding properly and solely *in rem.* The rule was laid down of a suit in admiralty against the brigantine Susanna and her cargo, seeking condemnation as prize of war. In such cases the *vessel and goods* are named and described as defendants. They are *the parties,* and the sentence binds all the world ; and such is the reason assigned by Patterson, J. in the case cited, why the death of the claimant (not the defendant) did not work an abatement. The question turned upon the form and nature of the proceeding. On a like principle the old action of ejectment was said not to abate by the death of the plaintiff's lessor ; for though he was the real party, there was yet a nominal party on the record, who by fiction had an interest in virtue of the supposed lease yet unexpired. The amount of the rule in *Penhallow* v. *Doane's adm'rs* is, that where the proceeding is simply *in rem,* the reason which abates a common law suit by death does not apply. A common law suit is never thus limited—the party tenant or defendant is always named on the record ; and on his death, as well as on that of the plaintiff, at any time before final judgment, the suit abated by the common law. 2 Sell. Pr. 191. A *real action* at common law comes nearest to an unmixed proceeding *in rem.* Yet where there was but one tenant, his death necessarily abated the suit ; "because

neither the *heir* nor the *executor* can *prosecute* or *defend* in a *real action*, where the demandant or tenant dies pending the suit." Stearns on Real Actions, 199. A suit in partition abated at the common law. *Thomas* v. *Smith*, 2 Mass. R. 479. The action or writ of right is probably the most striking instance. The action was there brought for the mere land on the mere right. Neither damages nor costs were ever recoverable by either party ; and yet, because the parties were named on the record, the law would not take the case out of the general rule. On the *mise* joined, it is well known that the issue might be decided by battle instead of the grand assize, at the election of the tenant. He might offer to prove his right by the body of his *champion.* The reason why battle must be waged by champion, says Coke, and after him Blackstone, is because, if any party to the suit dies, the writ must abate and be at an end for the present; and therefore no judgment could be given for the lands in question, if either of the parties were slain in battle. Co. Litt. 294, b. 3 Black. Comm. 339. Indeed the case of *Keite* v. *Boyd*, which is the plaintiffs' chief reliance in the case at bar, does not deny that replevin is within the common law rule. Rogers, J. who delivered the opinion of the court, on the contrary, said, that at common law *all* personal actions died with the party. He admitted that the court in which he sat had decided that the death of the defendant in *trover* abated the suit, but said he was unwilling to extend the cases further than he was bound to do by the principle of *state decisions.* We at least are required to look farther. Our constitution adopts the common law. It is, therefore, our duty, from all the evidence within our reach, to inquire what is the common law, and if the case in hand be open to its application, the plaintiffs must stand or fall accordingly as we shall find it to be for or against them.

I am entirely satisfied that at common law the suit in replevin abated by the death of Webbers, the original defendant, and that it cannot be revived or continued by this proceeding, unless we have some statute which reaches the case.

Our statute provides that where either plaintiff or defend-
ant shall die after interlocutory and before final judgment,
the action shall not abate if, in the first case, it might be ori-
ginally prosecuted by the plaintiff's executors or admin-
istrators, or if in the second case it might be originally
brought against the defendant's executors or administrators.
2 R. S. 308, § 2, 3, 2d ed. In the first case the plaintiff's
executors or administrators, and in the second he himself
may revive and continue the suit by *scire facias*. According
to the cases we have considered, if there had been inter-
locutory judgment against Webbers, and he had survived
the plaintiff R. M. Underhill, the personal representatives of
the latter might still have proceeded; for we have seen, by
authority, that they could have prosecuted originally. But
not so of this case, because no action would have lain against
Webbers' executors as such. Here is neither an action
which survives, nor an interlocutory judgment; and it would
have been the same, if, according to the theory of replevin,
we were to consider Webbers himself to have been an actor
or plaintiff. Yet his executors could not revive the suit,
because, admitting Webbers to have had interlocutory judg-
ment on his avowry against Underhill, and the now plaintiffs,
therefore, so far within the statute, they would stand with-
out its provisions for want of any surviving right on their
side.

But the statute mainly relied upon as comprehending this
case, is the 2 R. S. 477, § 2, 2d ed. This is a part of the
article "of scire facias," under the title "of proceedings by
*scire facias*," and in several other cases, and after providing
for a *sci. fa.* in cases where execution has been delayed be-
tween parties who are alive, it enacts generally, that "writs
of scire facias shall also be issued, in cases not otherwise
provided for by law, to revive a judgment against the per-
sonal representatives of any deceased defendant; or in fa-
vor of the personal representatives of any deceased plaintiff;
or where the situation of either party is changed by mar-
riage; or *to continue a suit by or against the representatives
of either party who shall have died in the progress thereof.*
But such writs against personal representatives of any party

NEW YORK, shall be issued within one year after the cause for issuing the
May, 1838. same shall arise."

Webbers' ex'rs      It is contended that, under this statute, the executors or
v.
Underhill.   administrators of a deceased party, either plaintiff or de-
fendant, may revive any suit in *their own favor*, without lim-
itation of time, and that they are liable to have any suit re-
vived *against them within one year*, whether the nature of
the action be such as would have lain originally by or against
them or not.    All this is undoubtedly true, provided the
statute intended to enlarge and extend the right of reviving
and continuing suits, and not to confine itself to the mere
recognition or assertion of the remedies already existing.
Indeed the words giving a scire facias "to continue a suit
by or against the representatives of either party," would
sweep out of existence all ideas of absolute abatement *by
death*, at any stage of any action, real, personal or mixed,
sounding in *contract* or *tort*.   Such a construction would
carry the statute not only beyond what the revisers intend-
ed, as declared by their note, 3 R. S. 786, 2d ed. : " Con-
formable to the existing law except the last clause, which is
new," (i. e. the limitation to one year;) but would lead to
the grossest legal absurdities.   The estates of decedents
might be subverted by lawsuits of a purely vindictive char-
acter.    Executors might proceed for slanderous words ut-
tered against their testator, or be visited by smart money for
slanders uttered by him, and so of a thousand like cases.   If
the statute intended to continue actions in such cases, why
did it not also give the right to commence them ?   Each case
is *in pari ratione.*

It is clear to my mind that the statute intended no such
pernicious extravagance as has been imputed to it ; and that
it is, mainly, as the revisers declare, a mere declaration that
writs of scire facias may issue as theretofore they had done, in
pursuance of the statute or common law.   We have already
noticed instances under the statute in which representatives
may come in ; there are also various cases at the common
law in which the writ lies, several of which are repeated
specifically in the section relied on.   Such were writs to
revive final judgments in cases of death or marriage.   The

clause which has been claimed as subverting the maxim *actio personalis*, &c. therefore, in effect, is little or nothing more than declaratory, in a more general way, of what the two sections we have cited from 2 R. S. 308, had specially enacted. At any rate, it added nothing to the law. The true method with the clause is to consider it as stricken out, and search for the particular provisions which it intended to leave unaffected.

The statute of Massachusetts provides generally, that when either party dies pending the suit, the executor or administrator may come in and prosecute or defend, if the cause of action survive; at least such was the statute when *Mellen* v. *Baldwin* was decided, which we have seen was replevin. The defendant having died pending the suit, the court refused to continue it, on the ground that the cause of action did not survive against the administrator. The case at bar is still farther without the provisions of any statute, and must be disposed of accordingly. The decision may operate harshly against the estate of Webbers, as probably all remedy upon the replevin bond is lost, *Badlam* v. *Tucker*, before cited from 1 Pick. 285, to save which, was I suppose, the main object of this suit. Probably the remedy lies in another form. *Merritt* v. *Lumbert*, 8 Greenl. 128.

Judgment must be for the defendant on the demurrer.

The CHIEF JUSTICE dissented on the first point.

Judgment for defendant.