Cotheal v. Talmadge.

---

## DAVID COTHEAL *v.* DANIEL TALMADGE. (*a*)

In an action against the surety of a bond in the penal sum of $1,000, which recited that an agreement for one year had been entered into between the plaintiff and a third person, providing, that upon his failure to keep the same, there should be paid to the plaintiff "the sum of $500, as liquidated damages," and that such third person should unite with others in a mining enterprise, proceed to California, join in the election of a captain of the company, assist in unloading from a vessel, receive, and transmit to the gold district, certain goods, tools, &c., to be sent by the plaintiff, engage in mining, and deliver to the plaintiff's agent, each day, the gold obtained; the condition of the bond being for the payment by the obligors to the plaintiff, upon the breach of the agreement, "the just and full sum of $500;" *Held*, that the amount named in the condition of the bond, was not to be regarded as a penalty, provided as a security to the plaintiff for the performance of the co-

---

(*a*) Affirmed in the court of appeals.

venants, but, the breach being admitted, the plaintiff was entitled to recover $500 as *liquidated* damages.   WOODRUFF, J., dissented.

Where the complaint charges that a party has broken an agreement, and the answer denies that the party has broken the agreement "further or otherwise than as hereinafter stated;" and acts of the plaintiff are afterwards averred in the answer, which amount to a rescission of the contract, or to a release from its performance; the burthen of proof is on the defendant, to show such rescission or release, and in default of his so doing, the plaintiff is not required at the trial to prove the breach.

A variance between an allegation in a pleading, and the evidence on the trial, will not be deemed material, unless it is *proved* to have actually misled the adverse party, to his prejudice, in maintaining his action or defence *upon the merits.*

In averring a written covenant in a pleading, it is sufficient to allege its true substance and effect, without stating the very words employed.

THIS was an action against the surety upon a bond.   Judgment for the sum named in the condition of the bond, ($500,) together with interest and costs, was entered for the plaintiff at special term.   An appeal was taken by the defendant.   The facts relating to the points decided appear in the opinion of WOODRUFF, J.

*Charles P. Kirkland,* for the defendant.

*Edward C. Delavan* and *Andrew Thompson,* for the plaintiff.

BY THE COURT.   WOODRUFF, J.—Upon the trial of this action, the defendant moved to dismiss the complaint, upon three grounds:—1st. That there was a variance between the covenant set forth in the complaint and the covenant produced and proved.   2d. That the plaintiff had not proved a breach of the agreement named in the condition of the bond declared upon.   3d. That the plaintiff had not proved that he had sustained any damages from the breach alleged.

After the testimony was closed, the defendant again insisted upon the same propositions, and that the plaintiff was only entitled to nominal damages.

To the ruling of the presiding judge adversely to the de-

Cotheal v. Talmadge.

fendant, his counsel duly excepted, and the inquiries which now come before us on the appeal, are: 1st. Was there any fatal variance? 2d. Was proof *by the plaintiff* of a breach of the agreement by the defendant's co-obligor (De Forest) necessary? 3d. Were the damages sustained by the plaintiff to be deemed *liquidated* or *fixed* by the agreement between the parties? for if they were, then no proof of damages was necessary or proper.

. 1st. On the subject of variance, I think the ruling of the judge was correct.

The complaint avers, that De Forest and others entered into articles of agreement with the plaintiff, which the complaint recites with some minuteness, not in the very words of the instrument, but according to their substance and effect; and in describing the covenant by De Forest and others, the averment is, that in consideration of the covenants in the said articles of agreement, he and they covenanted that he and they would severally observe "*said covenants,*" from the time of leaving the city of New York until the expiration of one year after his and their arrival at San Francisco.

This is in substance and effect true. A perusal of the agreement in its whole scope and meaning shows that such was the very import and effect of the covenants made by "De Forest and his associates." By the first clause the plaintiff was to furnish subsistence, tools, &c., for the period of one year from their arrival at San Francisco. By the second clause, they were to enter into articles of agreement among themselves for the regulation of the internal affairs of the association, and observe and keep them for the same period. By the third clause, the monthly proceeds were to be divided, save only one *fourth part*, which should be retained to *the end of the year*. And by the fourth clause, only those who *shall have kept the agreement during the year* should have any share of such reserved one fourth.

This agreement bound the parties to its observance and performance from that period, according to its obvious legal import, and might, therefore, be properly so described. The com-

plaint does not *purport* to set out the agreement literally, nor was it necessary to do so.

The objection seems to be founded upon the idea, that the pleader, in framing this averment in the complaint, was endeavoring to describe the second clause of the agreement, which reads substantially thus : The parties of the second part, and each of them, covenants, &c., " that they will enter into articles of agreement *with each other*, *which* they will duly *observe* from the time of their leaving the city of New York until the expiration of one year after their arrival at San Francisco." If such was the pleader's intention, he was not, it is true, very accurate in his description of the covenant, but I apprehend the whole scope of the agreement fully warranted the averment which he did make, and in the very language he employed.

But if it were conceded that the pleader made a mistake in the very words of the agreement, we could not reverse the judgment upon that ground. Section 169 of the code is explicit, that no variance shall be deemed material, unless it have actually misled the adverse party to his prejudice in maintaining his action or defence *upon the merits*, and when that is alleged, it shall be *proved*. It was not pretended on the trial, nor can it now be for a moment pretended, that the defendant was misled in this case, still less was it *proved* or attempted to be proved. The 170th and 176th section of the code are alike conclusive upon this point.

2. The next inquiry is, was the plaintiff, under the pleadings, bound to give proof of a breach of the agreement by the defendants ?

In this respect, I think the ruling on the motion to dismiss the complaint, was correct. The complaint avers that the said De Forest broke said agreement, refused to perform his covenants, and left the gold or mineral district, and did not exclusively and diligently devote himself to obtaining gold and other precious metals, pursuant to the articles of agreement.

The answer *denies* that De Forest broke the agreement, or

refused to perform any covenant, or left the gold or mineral district, or failed or omitted diligently and exclusively to devote himself, &c., &c., "*further or otherwise than as hereinafter stated;*" and it is afterwards in the answer stated, that De Forest performed in all things, *until the disbanding,* afterwards mentioned; and then the answer alleges that the plaintiff, on or about the 11th of October, 1849, by his acts and procurement, and by the act and procurement of his agents, did persuade, induce, and procure the said De Forest and others to disband, break up, and abandon the enterprise, and cease and discontinue further obtaining gold or other minerals, or obtaining any more stores, goods, articles, or tools, (which plaintiff was bound to furnish,) under or in pursuance of said articles, and did fully consent to such disbanding, breaking up, abandonment, ceasing, and discontinuance. Obviously, this is setting up, by way of defence, a rescission of the contract, or a release from its further performance; and, by its very statement, admits that the contract was not *in fact* performed by De Forest, and, under such an allegation, the defendant holds the affirmative of the issue as truly as under the plea of accord and satisfaction under our former system of pleading.

The denial of the breach of the agreement is qualified by the averment, that De Forest was released from its performance, and *so* he was guilty of *no* breach—a species of argumentative pleading which amounts to *no denial* at all, but simply puts the defendant to prove the release he alleges, when his allegation in this behalf was put in issue by the replication. I think, therefore, that the motion to dismiss was rightly denied upon this ground. The defendant held the affirmative of the issue he raised by his answer.

3. But the main question discussed by counsel on this appeal, is the third question above suggested. It is conceded that the plaintiff gave no evidence of the amount of damages sustained by him, and it is therefore insisted, that even if a breach of the agreement by De Forest was admitted or found by the jury, the plaintiff could recover nothing more than

VOL. I.                              37

nominal damages. The examination of this question renders a somewhat more particular recital of the agreement and the bond upon which the suit is brought, necessary.

The bond in question was entered into by the defendant and one Goyn T. De Forest, in the penal sum of one thousand dollars, and recited the making of an agreement by De Forest with the plaintiff, containing covenants which were to be performed by the said De Forest, and containing, also, a provision that if De Forest should fail to keep, or should break the said agreement, there should be paid to the plaintiff the sum of five hundred dollars, *as liquidated damages*. And the condition of the bond was, that if the obligors should, upon the breach of said agreement, pay the plaintiff the just and full sum of five hundred dollars, then the bond to be void, &c.

The agreement was thus, in effect, incorporated in and formed a part of the bond; and the condition of the bond was the payment of the sum of five hundred dollars, if, according to the provisions of the agreement, that sum should become payable to the plaintiff. Both the bond and the agreement contemplate the performance of the covenants contained in the agreement on the part of De Forest, and the payment to the plaintiff of five hundred dollars, in case he should fail to keep, or should break the agreement.

The agreement, according to its terms, bound the said De Forest:

To enter into articles of agreement with his associates in the enterprise;

To duly observe and perform such articles for one year after their arrival at San Francisco, in California;

To unite, from time to time, with his associates, in appointing a captain, who should direct their operations;

To assist in unloading the vessel at San Francisco;

To receive the goods, provisions, tools, &c., at San Francisco;

To transport them with all diligence to the gold district;

To devote himself exclusively to obtaining gold and other precious metals;

To deliver the same, *each day*, to the plaintiff's agent.

Cotheal v. Talmadge.

And according to the terms of the bond, in case the said De Forest shall fail to keep or shall break this agreement, the defendant "upon the breach of said agreement," must pay the plaintiff the sum of five hundred dollars, as liquidated damages.

The charge to the jury was, that if they should find for the plaintiff, they should find a verdict in his favor for five hundred dollars, as stipulated damages, and the interest thereon.

The defendant's exception to the charge raises the question, Are the five hundred dollars, mentioned in this agreement, and in the condition of the bond, to be regarded as liquidated damages, or (notwithstanding they are so designated therein) are they a *penalty*, provided *as a security* to the plaintiff for the performance of the various covenants which De Forest was bound to observe and keep ?

Article second of title 6, chapter 6, of part 3d of the revised statutes, (2 R. S. 378,) provides, that when any action shall be prosecuted for any penal sum, for the non-performance of any covenant or written agreement, the plaintiff shall assign breaches in his declaration, and the jury upon the trial, if they find the assignment of breaches true, and that the plaintiff should recover damages therefor, shall assess such damages, &c.; the plaintiff is then to have an award of execution for the damages so assessed, &c.; and the question thereupon recurs, Was the five hundred dollars a penal sum, or was it liquidated damages, properly so called, and as such, to govern the jury in their assessment ?

The *words* employed by the parties could not alter the *nature* of this stipulation in the plaintiff's favor. If it is *penal in its character*, the parties could not make it any less so by agreeing to *call it* by another name in their writings. (Story on Conts. § 1020 ; Story Eq. Jur. § 1318 ; *Sheill* v. *McNutt*, 9 Paige, 101 ; *Randall* v. *Everett*, 1 Moody & Malk. 41.)

Whether the stipulated sum is a penalty or not, is a question of construction, in which the real meaning and intent of the parties is to govern.

This intent is not the intention to agree *in form* as the par-

ties have agreed—not an intention to bind the obligor in form to pay the sum stipulated—not an intention to *sign the* agreement; *but* an intention to provide a *compensation*, and *nothing more* than a compensation, for the damages *actually* sustained by a conventional assessment, made by the parties in view of the probable or possible consequences of the breach; and, therefore, when the court can see that this was the real meaning and intent of the parties, the agreement will be enforced, even in cases where the measure seems a hard one, because the court will not make a new agreement for them.

The real meaning and intention of the parties, is to be gathered from the circumstances of the case, and especially from the nature of the breach contemplated; and in this connection, it will, in considering the present case, be an important inquiry, Can we say, according to the true legal construction of the agreement in question, that when it was executed, either party intended that if De Forest neglected to deliver to plaintiff's agent a piece of gold of the value of *one dollar*, the defendant should pay the plaintiff $500, notwithstanding De Forest performed the agreement in every other even the smallest particular?

I regard it as settled, that the sum mentioned, by whatever *name* it is called in the instrument, will be deemed a penalty.

Where the damages resulting from a breach are definite and fixed by law, as, for example, a failure to pay a sum of money; or where several breaches are provided for by the same stipulated amount, and the damages resulting from one or some of the breaches are definite and certain; though others are not, as, *e. g.*, where an agreement provides for the payment of a sum of money, and the performance of some other acts; or, where to hold the stipulated sum to have been intended as *compensation*, would involve an inconsistency or contradiction, as where the agreement provides for the performance of two distinct things, *each* susceptible of separate compensation, and each producing several damages, and the stipulated sum is agreed to be paid on the non-performance of both or either of them; (*Chaddick's Ex'r* v. *Marsh*, 1 Za-

briskie N. J. R. 463;) or, where the terms of the agreement are such that it is impossible that the stipulated sum *could* be compensation, and nothing more, for one or some of the several distinct and independent breaches contemplated, and at the same time be compensation for other breaches to which it is also applicable. For, obviously, the court cannot say the parties intended a single sum to be compensation under circumstances in which, if an equivalent for one breach, it could not possibly be an equivalent for that breach and for another also. In this last case, the amount stipulated to be paid will be deemed a penalty, unless it be apportioned among the contemplated breaches according to their respective importance, and therefore it is held that " Where the agreement contains several matters of different degrees of importance, and yet the sum named is payable upon the breach of any, even the least, it will be deemed a penalty." (*Carpenter* v. *Lockhart*, 1 Smith Ind. R. 326.)

These views will be found to accord in principle with the cases of *Spencer* v. *Tilden*, 5 Cow. 150, and note; *Noble* v. *Bates*, 7 Cow. 307; *Smith* v. *Smith*, 4 Wend. 468; *Ayres* v. *Pease*, 12 Wend. 393; *Knapp* v. *Maltby*, 13 Wend. 587; *Dakin* v. *Williams*, 17 Wend. 447; and S. C. in error, 22 Wend. 201; *Hoag* v. *McGinnis*, 22 Wend. 165–6; in some of which, the previous cases in this state, and numerous cases in England, are referred to and discussed. See also *Watt's Ex'r* v. *Shepard*, 2 Alabama R. 425, which is very full on this subject, and sustains these distinctions. *Vide* also *Carpenter* v. *Lockhart*, 1 Smith Indiana Reports, 326; *Owens* v. *Hodges*, 1 McMullan, (So. Car.) 104; *Chaddick* v. *Marsh*, 1 Zabriskie, New Jersey Rep. 463; and 2 Greenleaf Ev. § 258, and cases cited in the notes; Story on Conts. § 1020 to § 1022, and notes; Story Eq. Jur. § 1313 and onward to § 1320, and notes; *Randall* v. *Everett*, 1 Moody and M. 41; *Shield* v. *McNutt*, 9 Paige, 101; *Edwards* v. *Williams*, 5 Taunt. 148. The case of *Dakin* v. *Williams*, and several English cases of a similar character, arose in a sale of *good will*, and the covenant in question was in substance and effect a single covenant *to pre-*

*serve* the good will sold in full, and unimpaired integrity. *Any* interference with the good will was a violation of the *whole covenant* in its single and entire scope and purpose. The consequence of the slightest infringement might be the utter destruction of the good will which was the subject of the sale and object of protection.

The distinctions I have stated, therefore, in no wise conflict with those cases, nor with the general and well settled rule, that "where the damages are uncertain, and not capable of being ascertained by any satisfactory known rule, the parties will be deemed to have intended the sum named as liquidated damages, and this whether the uncertainty lies in the nature of the subject or in the particular circumstances of the case." This rule applies to a breach of a single agreement, or to any one of several distinct breaches separately provided for, but *cannot* make the *same sum* compensation for *one* or *more*, or *all* of *several* breaches of various stipulations.

The principles above stated appear to me to be conclusive in the case under consideration. The principal in the bond was bound by his agreement for various things, of various importance, and necessarily producing various results to the plaintiff. He might not go to California at all, in which event the plaintiff might or might not lose all benefit from the enterprise; or the plaintiff might have supplied his place with another person. The principal might also go to San Francisco, take his tools and dig gold, and refuse to act in concert with the others, or to pay over *any* of the fruits of his industry.

Or he might go to San Francisco and then refuse to dig for gold, and engage in other business without going to the mineral region; or he might employ himself industriously and faithfully, according to the letter and spirit of his agreement, performing in all things for the whole period, save the *last week* in the year; or he might perform in all things for the whole year, save in paying over to the agent a *definite, ascertainable* quantity of the gold which he on some *one day* discovered.

Or his breach may have consisted in his neglect to observe some one of the stipulations contained in the articles of agree-

Cotheal v. Talmadge.

ment, which it was covenanted the parties of the second part should make *inter sese*, and such neglect may have been of some trifling particular, of little or even of no importance to the plaintiff. Had the alleged breach of the contract consisted in the refusal of De Forest to deliver to the agent of the plaintiff, a piece of gold weighing *one ounce*, the rule or measure of damages would have been in no just legal sense *uncertain;* and yet, upon the doctrine contended for by the plaintiff, the whole $500 would have been payable as truly as if he had refused to deliver, and withheld all the gold dug during the entire year. Other supposable instances of breach, some important and some trifling in their character, some occasioning damages altogether uncertain, others in which the damages are fixed and determined by a clear and precise measure, might readily be suggested. Now, however fitting and proper it was (from the uncertainty and difficulty of ascertaining the damages which the plaintiff would sustain by the violation of the agreement in *any one* of the particulars) for the parties to liquidate the damages beforehand, and to agree what should be deemed compensation to the plaintiff for each one, they *could not* make what they may have intended should be, and what might perhaps be taken in fact to be compensation for, the grossest violations of the contract in all its particulars; also compensation, and no more than compensation, for the slightest deviation from the agreement in one only.

It may be true, that the breach of the agreement which is alleged in this case, to wit, the abandonment of the enterprise, is of such a character, that for *this* breach a recovery of the whole sum of five hundred dollars would not be at all unreasonable. I have little doubt that when the *obligors* in this bond consented to the stipulation purporting to fix the damages at five hundred dollars, they had in view a breach of the contract which should go to the breaking up of the enterprise, and defeating its main design. But if, as a matter of legal principle, the sum of five hundred dollars is in this case to be deemed liquidated damages, then *any* breach of the

agreement would subject the defendant herein to the payment of the whole sum.

Suppose, then, the party for whom the defendant became bound, (De Forest,) had remained in the faithful discharge of all his duties for the whole period specified in the agreement, but on his return to New York it appeared that he had collected one piece of gold of the value of five dollars, which he had not delivered to the plaintiff's agent, as he was bound to do, and thereupon an action had been brought upon the bond now in suit, the only breach of the agreement alleged being, that De Forest neglected to deliver *such piece of gold of the value of five dollars ;* it appears to me that it would not and could not be for one moment contended, that for *such breach* the whole sum of five hundred dollars would become payable ; and yet such must be the result if the damages named in the agreement are to be deemed liquidated and settled.

On the contrary, such a breach would be of a nature, in respect of which the damages are *fixed* and *certain*, by well settled principles. They are the *value* of the gold retained; and in this view the agreement falls within the class of cases above mentioned, in which several breaches are provided for by the same stipulated amount, and the damages resulting from some or one of them are *definite* and *certain*, and the others are not; in which cases the stipulated sum is deemed a penalty. Upon the principle, *"id certum est quod certum reddi potest,"* the value of the gold, and the damages resulting from its non-delivery, is as truly certain as if the agreement had provided for the payment to the plaintiff of a *sum of money.* In this aspect I regard the case of *Dakin* v. *Williams*, 17 Wend. 447, as rather sustaining than opposed to the view taken by the counsel for the defendant herein. And in *Chaddick's Ex'r* v. *Marsh*, above cited from 1 Zabriskie N. J. Rep. 463, Ch. J. Green fully adopts the rule, that where articles of agreement contain several distinct and independent covenants, upon which there may be several breaches, and *one sum* is stated at the close to be paid on breach of performance, that sum will be considered as a penalty. *Carpenter* v. *Lockhart*, 1 Smith Ind. Rep. 326, sustains the above views.

It is well said in the case from 1 Zabriskie, as also in 17 Wendell, that if upon the face of the instrument it be doubtful whether the contracting parties in part intended the sum inserted to *be* a penalty or liquidated damages, it will be deemed a penalty; and to my mind it is so far from clear that in this case the parties really designed that in every or any case of breach the whole sum should be paid, that, I think, on the contrary, they did *not* so intend.

The distance to which the parties were going, the difficulty of supplying the places of those who should not perform the agreement, the unsettled state of the country where they were to be employed, the possible impracticability of making proof of the facts necessary to determine the amount of damages on a trial, and the uncertainty how much the plaintiff would realize from performance, or fail to realize if the parties of the second part refused to explore and dig, rendered the subject eminently suited to the rule, that the parties may liquidate the damages resulting from a breach of contract, if they think proper.

But I am constrained by the considerations above suggested to hold, that they have failed to do so in this case, and that they have called "liquidated damages" what in the very nature of the case, and in judgment of law, is a *penalty*, and by giving it another name, they could not make it less so.

And I am therefore of the opinion, that the sum named in the bond, is a penalty held over the parties as a *security* collateral to the performance of the various agreements, which De Forest was bound to observe and keep.

The charge to the jury was, therefore, in my opinion, erroneous in this respect, and the judgment should be reversed and a new trial ordered.

Daly, J.—The agreement in this case shows that the actual intent of the parties was, that the sum of $500, claimed to be recovered, should be regarded as liquidated damages, and not as a penalty, and I see nothing in the stipulations themselves which should prevent the court from giving effect to that intent. The scheme which the agreement embraces, consisted

of a number of particulars, all more or less dependent on each other, all necessary to the attainment of its object, and required the utmost harmony and a ready co-operation between all the parties. A want of hearty co-operation, or bad faith in any of the parties, would endanger and probably put an end to the whole enterprise.

The plaintiff agreed to make, and did make, a large expenditure, looking for his indemnity to the ultimate success of the enterprise, to the proceeds of the labor at the mines. The loss of a day from want of diligence, or a refusal to labor for a day in unloading the vessel, might or might not be compensated for by the price of a day's wages in California; but the term of labor was a year, and a day lost at any time after the arrival at San Francisco, was a day from the whole term, and the result of labor, for that time, at the mines, was clearly not ascertainable. The many details which must necessarily enter into an inquiry as to the amount of damages for any given breach, and the difficulty and expense of establishing, by competent proof, the circumstances necessary to make out the breach and damages, (assuming that the damages for some of the breaches would be what are termed certain,) incline me to class the case with those in which the law permits the agreement for liquidated damages to stand as actually intended by them. The cases of *Dakin* v. *Williams*, 22 Wend. 201, and of *Riley* v. *Jones*, 1 Bingham, 302, I think sustain this view. The judgment, therefore, should be affirmed, with costs.

INGRAHAM, FIRST J.—Upon all the points made in this case, except that which relates to the amount of damages to be recovered, I concur in the opinion of Judge WOODRUFF. In regard to the rule of damages, I am of the opinion that this case should come under the rules laid down in the case of *Dakin* v. *Williams*, 19 Wend. 447, and 22 Wend. 201, viz., that when the damages arising from the breach of the covenants are all of them necessarily uncertain, and no one of them has any certain amount of damage, then the amount fixed by the parties, as liquidated damages, is to be regarded as stipulated

damages, and not as penalty. Such is the condition of these covenants. There is no one, upon the breach of which any fixed sum is recoverable; and from the peculiar nature of the contract, no sum could be fixed, and I very much doubt whether any evidence could be procured by which any specific amount of damages could be ascertained. The plaintiff made certain advances, which it is conceded do not furnish the rule by which the damages are to be estimated, and the utter uncertainty attending upon the performance of the covenants in California, would render the case a very fit and proper one for the liquidation of the amount by the parties themselves.

It is suggested, that the breach of some of the conditions would be trifling in themselves, and ought not to involve so heavy a punishment. Such an objection might have been, and was made in the case referred to, when the obligor was bound not to aid or assist in the publication of a newspaper, and the breach was advertising in it, which was certainly a very trifling matter.

When, consistently with rules heretofore established, the damages fixed by the parties as liquidated damages can be allowed, I am of the opinion that such rules should be more strictly enforced, and the disposition of the courts to interfere with the contract made by parties on this subject, on account of some peculiar hardship in the case itself, ought not to be encouraged. No layman, on reading this paper, would suppose for a moment that the parties intended anything different from what was written, viz., that a failure to comply with the agreement, made the defendant liable for the whole sum of $500. That such was the intent of the defendant, as well as the plaintiff, I cannot doubt.

Although there were several conditions, yet they were all connected with, and tending to, one object, viz., the procuring gold in California. The refusal to perform any one of them, was such a violation of the agreement as to defeat the main end in view; and although a partial performance might have resulted to some advantage, yet it would not have at all fulfilled the grand object contemplated by the contract, viz., a united

and faithful performance by the whole company.   No one of
the cases cited by the defendant, justifies the contrary conclu-
sion.   The judgment should be affirmed.

Judgment affirmed.