JESSE M. EMERSON, Successor of ROBERT GRANT, Deceased, Assignee of WILLIAM MONTGOMERY, Respondent, *v.* WILLIAM BLEAKLEY, Jr., Sheriff of Westchester County, Appellant.

*Practice—Action by Assignee against Sheriff, survives when—Abates when.*

An action brought by an assignee for the benefit of creditors for a tortious taking of trust property from his possession by a sheriff on execution, survives to his legal representatives—and the suit does not abate on the death of the assignor.

On or about the 17th day of December, 1859, one Alfred Booth obtained a judgment in the Supreme Court (Westchester County) against William Montgomery and William Garabrant for $2,268.38, on two promissory notes made by said "Montgomery & Co."

On the 20th day of December, 1859, the said Booth caused an execution on said judgment to be issued against the property of said Montgomery and Garabrant to the Defendant in this suit, William Bleakley, Jr., who was at that time sheriff of Westchester County.

On the 20th day of October, 1857, a stock company was organized by William Montgomery and four others, by the title of the "New York Steam Saw-mill and Machine Company."

On the 21st of October, 1857, one day after the date of the certificate of incorporation of said company, William Montgomery and George D. Lund, who had become a partner of Montgomery in the place of Garabrant, for the consideration of $100,000, made a bill of sale of "all the tools, fixtures, leases, policies of insurance, stock and materials, good-will and appurtenances of whatever kind or nature appertaining and belonging to the manufacturing and machine business heretofore conducted under the name of William Montgomery & Co., in the town of Yonkers, Westchester County, N. Y., together with the full right to the immediate occupancy of the premises in which said property was

contained in Yonkers," &c., &c., to the said New York Steam Saw-mill and Machine Company. On the same day (October 21, 1857), said Montgomery and Lund executed another bill of sale to said Steam Saw-mill and Machine Company, for consideration of $15,000, " of all the steam saw-mills, steam-engines, boilers, machinery, and stock of all kinds manufactured or in process of manufacture, appertaining to and belonging to the engine and machine manufacturing department of the business heretofore conducted under the name of Messrs. Montgomery & Co., together with all the belongings thereto," &c.

Montgomery became the President of this machine company on its organization, and always continued such president, and had the management and direction of its business.

· Montgomery & Co. had a lease of the factory premises for five years from May, 1855, which passed to the machine company under the bill of sale first above mentioned.

On the 23d day of December, 1858, an agreement was entered into between Montgomery and certain others of the stockholders of the said machine company, by which said Montgomery was to become possessed of their stock on certain conditions, which, it is claimed, were never performed by Montgomery.

Montgomery, on the 29th day of November, 1859, executed a general assignment for the benefit of his individual creditors to Robert Grant, of " all the estate and property, real and personal, of him the said William Montgomery, either individually or as a member of the late firm of William Montgomery & Co., *or a corporator or stockholder of the New York Steam Saw-mill and Machine Company.*" Under this assignment, Grant claimed title to the property in question; and as the Defendant, as sheriff, had in the first instance levied upon said property under the said execution of Booth against Montgomery & Garabrant, this action of replevin was brought by Grant.

On the trial the jury found that the *stock and materials* belonged to Robert Grant, valuing the same at $13,233.81, and that the *tools and fixtures* belonged to the Steam Saw-mill and Machine Company, valuing the same at $13,158 ; and judgment has been

ordered in conformity with such findings, and has been affirmed by the General Term of the Second District. Robert Grant died September 28, 1861.

*R. W. Van Pelt* for Appellant.

*W. R. Stafford* for Respondent.

HUNT, J.—The Appellant claims a reversal of the judgment below, on the ground that this being an action of replevin, for a tortious taking of the property in question by the Defendant from the possession of Grant, the action abated by the death of Grant, in whom the right of action existed. Grant died a year and a half before the trial occurred on which the present judgment was rendered, and the claim involves the invalidity of all the proceedings subsequent to his death. The Appellant also claims that the existence of a verdict in favor of Grant, at the time of his death, places the Plaintiff in no better situation, for the reason that that verdict was afterward set aside by the Court of Appeals; and a verdict set aside, it is claimed, is, in law, as if there had been no verdict. The Appellant insists that upon the death of Grant, the trust estate conveyed to him by the assignment of Montgomery, descended to his personal representatives, and that this action should be brought by them, if by any one, and not by a newly appointed trustee. These suggestions involve separate considerations, which will be more readily appreciated by a separate examination of the propositions.

*First.* Did the action of Grant, for the tortious taking and conversion of this large amount of property, abate by his death, in the sense that all claim for compensation was thereby ended? If his action had been to recover damages for an assault and battery or a libel of which he had been the subject, upon his death before verdict, all right to damages, in any form or by any party, would have ceased. The maxim, "*actio personalis moritur cum persona*," applies to such a case. In the present case a debtor in failing circumstances had conveyed to Grant a large amount of personal property, upon the trust and direction that he should apply the proceeds of the same in the payment of

certain specified debts. The Defendant, as sheriff, seizes the same upon an execution against the insolvent debtor, and removes the same from the possession of Grant. The assignee, Grant, brings an action to recover damages for such removal, but before trial he dies. The rule in such case is provided by statute (2 R. S. 447, § 1): " For wrongs done to the property, rights, or interests of another, for which an action might be maintained against the wrong-doer, such action may be brought by the person injured, or, after his death, by his executors or administrators, against such wrong-doer, and after his death against his executors or administrators, in the same manner, and with the like effect in all respects, as actions founded upon contracts." It is further provided by section 121 of the Code, that " No action shall abate by the death, marriage, or other disability of a party, or by the transfer of any interest therein, if the cause of action survive or continue." Being a claim for wrongs done to the property of Grant, and it being clear, therefore, that the cause of action survived the death of Grant, the right to damages did not cease with his life.

It is said, however, by the Appellants, that this course of action vested in Grant's executors, and not in a new trustee to be appointed by the Court; and this is the second question in the case. I understand the law to be, that personal estate held in trust, upon the death of the trustee descends to, and the title rests in, the personal representatives of the trustee, and that the provisions of the statute giving the title to a trustee to be appointed by the Court, apply to trusts in real estate only (1 R. S. 730, § 68; Savage v. Burnham, 17 N. Y. 561; Kane v. Gott, 24 Wend. 641; Bunn v. Vaughan, decided January 7, 1867, in this Court). The parties, however, have made the law for themselves in the present case, by their stipulation of October 20, 1862. This stipulation is signed by the Appellant's attorneys; recites that Grant sued as the assignee of Montgomery; that he died since judgment had been entered; that Emerson had been appointed his successor in the execution of the trusts contained in the assignment, and that an appeal was about to be taken from the

judgment, and concludes thus: "We do hereby consent that the said Emerson be substituted for said Grant as Plaintiff in this action." This binds the Appellants as completely as if they had stipulated that Emerson was Grant's executor, and that the action should proceed without further delay. They agree, in substance, that Emerson is the proper person to prosecute Grant's rights under the assignment, and consent that he may do so as Plaintiff in the present action. If the general rule of law is as claimed by the Appellants, it is evident that the present action is properly prosecuted. This view of the case renders it necessary to consider the effect of the first verdict, the vacating the same, and the rendering of a second verdict in favor of the Plaintiff.

There are several minor questions presented upon the Appellant's brief, which have been carefully considered, and no reason for disturbing the judgment is perceived. The questions of fact were of a doubtful character, but having been determined by the jury, we are not at liberty to interfere with them. Neither do questions of practice or regularity properly come under consideration in cases like the present. The most of the questions of law were ruled as requested by the Appellant. If any injustice has been suffered by him, it was at the hands of the jury, for which we can give no redress. The judgment should be affirmed.

PARKER, J.—I think there was no abatement of the action by the death of Grant, the original Plaintiff. The cause of action survived by virtue of the statute (2 R. S. 447, § 1, 1st ed.; Webbers' Exr's v. Underhill, 19 Wend. 447); and this being so, section 121 of the Code saves the action from abatement.

Although Grant held the property in question as a *trustee*, on his death it passed, under the common law, to his personal representatives, who were bound to execute the trust (De Peyster v. Ferrers, 11 Paige, 13). We held in the case of Bunn v. Vaughan, decided at the last term of this Court, that section 68 of the article of the Revised Statutes relative to uses and trusts (1 R. S. 730, 1st ed.), does not relate to personal property, and that the common-law rule above referred to still exists and applies in reference to

such property. The consequence is, that on the death of Grant, the title to the property passed to his legal representatives, who, unless they had transferred it to Emerson, should have been substituted. But the appointment, by the Court, of Emerson to execute the trusts of the assignment, and his substitution as Plaintiff in the action, having both been made by the express consent and stipulation of the Defendant, set forth in the case, I am inclined to think his motion for a dismissal of the complaint upon the trial, on the ground that the title to the property was in the personal representatives of Grant, was properly denied. Non constat that the cause of action had not passed by assignment from the personal representatives of Grant to Emerson. In that case he was the proper person to be substituted; and, I think, as against the Defendant, under his stipulations, such assignment should be presumed.

The other grounds on which the nonsuit was claimed, to wit, that Grant was not the owner of the property when the suit was brought, and that it was incompetent for Montgomery to make any transfer to himself, were also properly regarded as not well taken—the first as involving a question of fact for the jury, and the other as not covering the whole of the Plaintiff's claim.

The objection to the introduction of Grant's testimony on the former trial, was properly overruled. It was but the common case of reproducing the testimony of a deceased witness. I see nothing in the objection that he was a party. He was also a witness, and therefore within the rule allowing proof of what he testified to be given. The inquiry of the witness Montgomery, whether he received any directions from Grant in regard to the property, immediately after the delivery of the assignment, was relevant and proper as part of the res gestæ. The question to the same witness, as to what was done with moneys which he had stated were realized from a portion of the assigned property, was also properly allowed.

I see no error in the rulings in regard to the questions put to the witness Lund as to his delivery, when he left, of the stock,

&c., at the machine shop, to Montgomery, and as to his ever again exercising any acts of ownership over the property. This was clearly pertinent to the question which was litigated, whether Montgomery owned the property, or any part of it.

The offer of the Defendant to prove that the sheriff of Westchester levied upon the property in question, as the property of the Steam Saw-mill and Machine Company, after this suit was brought, was wholly irrelevant and immaterial, and was properly excluded.

The Court was requested to charge " that if the sheriff (Defendant) found Montgomery in the actual possession of the property levied on under the Booth execution, the Plaintiff must prove a demand of said property and refusal to surrender it before he could recover," which was refused. If the property belonged to the Plaintiff, the taking it out of the possession of Montgomery— who was the Plaintiff's agent, using it in the Plaintiff's business— in hostility to the Plaintiff's right to it, was a wrongful taking as against the Plaintiff (Clark *v.* Skinner, 20 Johns. R. 465), and no demand was necessary (Cummings *v.* Vorce, 3 Hill, 282 ; Dunham *v.* Wyckoff, 3 Wend. 280). The request was therefore properly refused.

As to the Defendant's request to charge that Montgomery, while acting as president of the machine company, could not become the purchaser of its property if objected to by any stockholder or creditor of the company, there was nothing in the evidence calling for such instruction to the jury, nor for anything more on that subject than the Court had already said to them ; for they had already been instructed that, as to all that portion of the property in question which had been transferred to the machine company, and which had been acquired by said company, the title to it remained in the company at the time of the assignment, and did not pass to Grant, and that Montgomery's interest in such property at the time of the assignment was a stockholder's interest only, and that only such interest passed by the assignment, so that the additional instruction requested was entirely nugatory.

The complaint now made by the Plaintiff's counsel, that under

the charge of the Court it was the duty of the jury to render a verdict for the Defendant as to all the property in question, and that the Court below should, on that ground, have set aside the verdict, is not one which this Court can listen to or redress. The case is not open to us for an examination of the facts.

The finding by the jury that Grant was the owner of that portion of the property in question described as *stock and materials*, and not of that described as *tools and fixtures*, rendered necessary a more specific description of the two classes. This the Court ordered to be made by directing the complaint to be amended so as to conform to the evidence, and to designate the portion of the property found for the Plaintiff described as " stock and materials," and the portion found for the Defendant described as " tools and fixtures," to which the counsel for the Defendant excepted ; and thereupon the Plaintiff did amend the complaint by inserting at the end of the list of articles a list of those which he denominated " *tools and fixtures*," and stated that the residue of said property was known as " stock and materials." No fault was found with the manner in which the distribution was made and the amendment carried out.

I think it was competent for the Court to amend the verdict, as was in effect done, for the purpose not of adding or subtracting, but specifying in accordance with the evidence, as was done in this case (Sleght *v.* Hartshorne, 1 Johns. R. 149 ; 1 Seldon's Pr. 480 ; Archbold's Pr. vol. i., 215 ; vol. ii., 275).

Upon the whole case, I am of the opinion that the judgment should be affirmed. Affirmed.