JESSE M. EMERSON, successor of ROBERT GRANT, deceased, assignee of WILLIAM MONTGOMERY, Respondent, *v.* WILLIAM BLEAKLEY, Jr., Sheriff, &c., Appellant.

*Trustee Dying—Substitution, what proper.*

When the intestate held personal property as a trustee, under the common law rule it passes at his decease to his personal representatives, who are bound to execute the trust; and consequently they should be substituted in the place of the decedent. But when the Court appoints a trustee by the express consent and stipulation of these representatives, his appointment is a proper substitution.

On or about the 17th day of December, 1859, one Alfred Booth obtained a judgment in the Supreme Court, Westchester county, against William Montgomery and William Garabrant for $2,268.38 on two promissory notes made by said "Montgomery & Co."

On the 20th day of December, 1859, the said Booth caused an execution on said judgment to be issued against the property of said Montgomery and Garabrant, to the Defendant in this suit, William Bleakley, Jr., who was at that time sheriff of Westchester county.

On the 20th day of October, 1857, a stock company was organized by William Montgomery and four others, by the title of the "New York Steam Saw-mill and Machine Company."

On the 21st day of October, 1857, one day after the date of the certificate of incorporation of said company, William Montgomery and George D. Lund (who had become a partner of Montgomery in the place of Garabrant), for the consideration of $100,000, made a bill of sale of "all the materials, good-will, and appurtenances of whatever kind or nature appertaining and belonging to the manufacturing and machine business heretofore conducted under the name of William Montgomery & Co., in the town of Yonkers, Westchester county, N.Y., together with the full right to the immediate occupancy of the premises in which said property was contained, in Yonkers," &c., &c., to the said New York Steam Saw-mill and Machine Company.

On the same day (October 21, 1857) said Montgomery and

Lund executed another bill of sale to said Steam Saw-mill and Machine Company, for consideration of $15,000, " of all the steam saw-mills, steam-engines, boilers, machinery, and stock of all kinds manufacturing, or in process of manufacturing, appertaining to and belonging to the engine and machine manufacturing department of the business heretofore conducted under the name of Messrs. Montgomery & Co., together with all the belongings thereto," &c.

Montgomery became the president of this Machine Company on its organization, and always continued such president, and had the management and direction of its business.

Montgomery & Co. had a lease of the factory premises for five years from May 1, 1855, which passed to the Machine Company under the bill of sale first above mentioned.

On the 23d day of December, 1858, an agreement was entered into between Montgomery and certain others of the stockholders of the said Machine Company, by which said Montgomery was to become possessed of their stock on certain conditions, which it is claimed were never performed by Montgomery.

Montgomery, the 29th day of November, 1859, executed a general assignment for the benefit of his individual creditors, to Robert Grant, of " all the estate and property, real and personal, of him, the said William Montgomery, either individually, or as a member of the late firm of Montgomery & Co., or a corporator or stockholder of the New York Steam Saw-mill and Machine Company."

Under this assignment Grant claimed title to the property in question. And as the Defendant, as sheriff, had in the first instance levied upon said property, under the said execution of Booth, against Montgomery and Garabrant, this action of replevin was brought by Grant.

On the trial, the jury found that the stock and materials belonged to Robert Grant, valuing the same at $13,233.81; and that the tools and fixtures belonged to the Steam Saw-mill and Machine Company, valuing the same at $13,188 ; and judgment has been ordered in conformity with such findings, and has been

affirmed by the General Term of the Second District.  Robert Grant died September 28, 1861.

*R. W. Van Pelt* for the Appellant.

*W. R. Stafford* for the Respondent.

PARKER, J.—I think there was no abatement of the action by the death of Grant, the original Plaintiff.  The cause of action survived by virtue of the statute (2 R. S. 447, § 1, 1st ed.); Webbers' Exrs. *v.* Underhill, 19 Wend. 449) ; and this being so, section 121 of the Code saves the action from abatement.

Although Grant held the property in question as a trustee, on his death it passed, under the common law, to his personal representatives, who were bound to execute the trust (De Peyster *v.* Ferrers, 11 Paige, 13).  We held in the case of Baum's Exr. *v.* Vaughn, decided at the last term of this Court, that § 68 of the article of the Revised Statutes relative to uses and trusts (1 R. S. 730, 1st ed.) does not relate to personal property, and that the common law rule above referred to still exists, and applies in reference to such property.

The consequence is, that on the death of Grant the title to the property passed to his legal representatives, who, unless they had transferred it to Emerson, should have been substituted.  But the appointment by the Court of Emerson to execute the trusts of the assignment, and his substitution as Plaintiff in the action, having both been made by the express consent and stipulation of the Defendant, set forth in the case, I am inclined to think his motion for a dismissal of the complaint, upon the trial, on the ground that the title to the property was in the personal representatives of Grant, was properly denied.  Non constat that the cause of action had not passed, by assignment, from the personal representatives of Grant to Emerson.  In that case he was the proper person to be substituted ; and I think, as against the Defendant under his stipulations, such assignment should be presumed.

The question of the grounds on which the nonsuit was claimed, to wit, that Grant was not the owner of the property

when the suit was brought, and that it was incompetent for Montgomery to make any transfer to himself, were also properly regarded as not well taken; the first as involving a question of fact for the jury, and the other as not covering the whole of the Plaintiff's claim.

The objection to the introduction of Grant's testimony on the former trial was properly overruled. It was but the common case of reproducing the testimony of a deceased witness. I see nothing in the objection that he was a party. He was also a witness, and therefore within the rule allowing proof of what he testified to be given.

The inquiry of the witness, Montgomery, whether he received any directions from Grant in regard to the property, immediately after the delivery of the assignment, was relevant and proper as part of the res gestæ.

The question to the same witness, as to what was done with moneys which, he had stated, were realized from a portion of the assigned property, was also properly allowed.

I see no error in the rulings in regard to the questions put to the witness, Lund, as to his delivery, when he left, of the stock, &c., at the machine shop, to Montgomery, and as to his ever again exercising any acts of ownership over the property. This was clearly pertinent to the question which was litigated, whether Montgomery owned the property or any part of it.

The offer of the Defendant to prove that the sheriff of West-chester levied upon the property in question as the property of the Steam Saw-mill and Machine Company, after this suit was brought, was wholly irrelevant and immaterial, and was properly excluded.

The Court was requested to charge "that if the sheriff (Defendant) was found in the actual possession of the property levied on under the Booth execution, the Plaintiff must prove a demand of said property, and refusal to surrender it, before he can recover" what was refused.

If the property belonged to the Plaintiff, the taking it out of the possession of Montgomery, who was the Plaintiff's agent,

using it in the Plaintiff's business, in hostility to the Plaintiff's right to it, was a wrongful taking as against the Plaintiff (Clark *v.* Skinner, 20 J. R., 465); and no demand was necessary (Cummings *v.* Vorce, 3 Hill, 282; Dunham *v.* Wyckoff, 3 Wend. 280). The request was therefore properly refused.

As to the Defendant's request, to charge that Montgomery, while acting as president of the Machine Company, could not become the purchaser of its property, if objected to by any stockholders or creditors of the Company, there was nothing in the evidence calling for such instruction to the jury, nor for anything more on that subject than the Court had already said to them ; for they had been already instructed that, as to all that portion of the property in question which had been transferred to the Machine Company, and which had been acquired by said Company, the title to it remained in the Company at the time of the assignment, and did not pass to Grant, and that Montgomery's interest in such property, at the time of the assignment, was a stockholder's interest only, and, that only such interest passed by the assignment, so that the additional instruction requested was entirely uncalled for.

The complaint now made by the Plaintiff's counsel, that, under the charge of the Court, it was the duty of the jury to render a verdict for the Defendant as to all the property in question, and that the Court below should, on that ground, have set aside the verdict, is not one which this Court can listen to or consider. The case is not open to us for an examination of the facts.

The finding by the jury that Grant was the owner of that portion of the property in question described as *stock and material,* and not of that described as *tools and fixtures,* rendered necessary a more specific description of the two classes. This the Court ordered to be made by directing the complaint to be amended so as to conform to the evidence, and to designate the portion of the property found for the Plaintiff described as stock and material, and the portion found for the Defendant described as tools and fixtures, to which the counsel for the Defendant excepted. And thereupon the Plaintiff did amend the complaint by inserting at

Opinion by PARKER, J.

the end of the list of articles a list of those which he denominated *tools* and *fixtures*, and stated that the residue of said property was known as stock and material. No fault was found with the manner in which the distributing was made and the amendment carried out.

I think it was competent for the Court to amend the verdict, as was in effect done for the purpose, not. of adding or subtracting, but of specifying in accordance with the evidence, as was done in this case. (Sleght *v.* Hartshorne, 1 J. R. 149 ; 1 Sellon's Pr. 480 ; Archbold's Pr. vol. 1, 215 ; vol. 2, 275.)

Upon the whole case, I am of the opinion that the judgment should be affirmed.

Affirmed.

JOEL TIFFANY,
State Reporter.
