ALBANY,<br>
January, 1823.<br>
CLARK<br>
v.<br>
SKINNER.

---

CLARK against SKINNER.

THIS was an action of *replevin* for a horse, cutter, and harness. The defendant pleaded, 1. *Non cepit.* 2. Avowry and justification of the taking, by virtue of execution issued on a judgment in a Justice's Court, in favour of *L. F. Steevens* against *John Clark*, the father of the plaintiff; and the defendant being a constable, averred, that he took the horse, &c. out of the possession of *John Clark*, the defendant in the execution; and that the property and possession of the horse, &c. were in *John Clark* at the time of the taking, on the execution; and traversed, that the property or possession was in the plaintiff, &c.

*Replevin lies at the suit of the owner of a chattel, against a Sheriff, constable, or other officer, who has taken it from the owner's servant or agent, while employed in the owner's business, by virtue of an execution against such servant or agent; the actual possession of the property, in such case, being considered as remaining in the owner, and not in the defendant in the execution.*

The plaintiff replied to the avowry, that the property and possession of the horse, &c. were in the plaintiff, and concluded to the country, &c.

The cause was tried at the *Seneca* circuit, in *June*, 1821, before Mr. Justice *Yates*. On the trial it was fully proved, that the horse, &c. were the property of the plaintiff; and that *John Clark*, his father, at his request, went a few miles, to *Waterloo*, to transact some business for the plaintiff, who furnished him with the horse, &c. for that purpose; that while *John C.* was at a tavern in *W.*, on the plaintiff's business, the defendant, as constable, by virtue of an execution against him, levied on the horse, &c. The defendant moved for a nonsuit, on the ground, that *replevin* would not lie, as the property was shown to be in the actual possession of *John Clark* at the time; and, also, because the plaintiff had not proved the fact averred in his replication, on which the issue was joined, that the property and possession were in the plaintiff. The Judge overruled the motion, and charged the jury that the plaintiff was entitled to a verdict; and the jury, accordingly, found a verdict for the plaintiff.

A motion was made to set aside the verdict, and for a new trial.

*L. F. Steevens*, for the defendant, contended, that the property being in the actual possession of the defendant in the execution, when it was taken; and, in the custody of the law, could not be replevied. He cited *Thompson* v. *Button*, 14 *Johns. Rep.* 84. *Gardner* v. *Campbell*, 15 *Johns. Rep.* 401.

*Michael Hoffman*, contra, contended, that the evidence given at the trial fully supported the issue. Whether the issue was properly joined or not, was not material; for the same evidence which would maintain the issue in trespass, will support it in replevin. The *absolute*, or *general* owner of *personal* property, having the right of immediate possession, may maintain an action for any injury to it, though it never was in his possession; for the rule is, that the *property* in personal chattels draws to it the possession. (1 *Chitty's Pl.* 48, 49. 2 *Saund.* 47 a. n. 1. *Lotan* v. *Cross*, 2 *Camp.*

*N. P. Rep.* 464.) Where the person in actual possession is the mere *servant* of the absolute owner, and having no interest in the property, the general owner must bring the action. The general property being in the plaintiff, and *John C.* being his mere agent or servant, the possession must be considered as in the plaintiff; and the issue, therefore, was supported. *Replevin* lies in all cases where there is an unlawful taking. Suppose a person sends a portrait to a painter to take a copy from it, and it is taken on an execution against the painter, cannot the owner of the portrait bring an action of replevin against the Sheriff, or other officer, to recover back his property? Or is he to be told, that he can only bring trespass, or trover, and recover damages?

*Steevens*, in reply, said, the issue joined was as to the possession as well as the property. The question was not whether trespass would lie, but whether replevin would lie to take goods out of the custody of the law.

PLATT, J. I am of opinion, that *replevin* lies in favour of any person whose goods are taken by a *trespasser*. As to *John Clark*, the goods were *in the custody of the law*, and therefore, *irreplevisable* : but, in my judgment, the law does not deny the remedy by *replevin*, to any person whose goods are taken from his *actual* or *constructive* possession by a wrong-doer. It is, in many cases, the only certain and efficacious remedy; and, without it, a man's personal chattels would never be safe, unless he keeps them in his own absolute custody. Suppose, *John Clark*, in this case, had taken the horse and sleigh, as a trespasser himself, would they be in the *custody of the law*, as to the true owner, because the constable happened to find them in the hands of a person against whom he had an execution? If I leave my watch to be repaired, or my horse to be shod, and it be taken on a *fi. fa.* against the watch-maker, or blacksmith, shall I not have replevin? If the owner put his goods on board a vessel to be transported, shall he not have this remedy, if they are taken on execution against the master of the vessel? It seems to me indispensable, for the due pro-

tection of personal property. In many cases, it would be mockery to say to the owner, bring an action of trespass or trover against the man who has despoiled you. *Insolvency* would be both a *sword* and a *shield* for trespassers. Besides, there are many cases, where the *possession* of chattels is of more value to the owner, than the estimated value in money; and the action of *detinue* is so slow and uncertain, as a *specific* remedy, that it has become nearly obsolete.

The rule, I believe, is without exception, that wherever *trespass* will lie, the injured party may maintain *replevin*. (*Pangburn* v. *Patridge*, 7 *Johns. Rep.* 140.) Baron *Comyns* says, " replevin lies of all goods and chattels unlawfully taken ;" (6 *Comyn's Dig. Replevin* A.) though, (*Replevin* D.,) he says, " replevin does not lie for goods taken in execution." This last proposition is certainly not true, without important qualifications. It is untrue, as to goods " taken in execution," where the *fi. fa.* is against *A.* and the goods are taken from the possession of *B.* By goods " taken in execution," I understand goods *rightfully taken*, in obedience to the writ : but if, through design or mistake, the officer takes goods which are not the property of the defendant in the execution, he is a *trespasser ;* and such goods never were " *taken in execution*," in the true sense of the rule laid down by Baron *Comyns.*

Creditors, who have not indemnified the officer, have no right to complain of the delay of a replevin : and, as regards the interest of creditors who indemnify, no greater inconvenience can result from the action of *replevin*, than from a suit in *trespass* against the officer who levies. It may delay the execution, but there are countervailing benefits ; for, if the creditor has indemnified the officer against a claim of property in a stranger, the damages will be less, if such claim be established in an action of *replevin*, than in an action of *trespass ;* because, in the former mode, the property would be speedily restored to the injured owner, without deterioration or sacrifice ; and the creditor would be thereby relieved from his obligation to indemnify, except for mere nominal damages. Whereas, if *trespass* or *trover* be the only remedies, the creditor who indemnifies, incurs a risk for the whole value of the property, and its safe keeping,

until the uncertain termination of a tedious lawsuit. As to the officer himself, if he acts *bona fide*, similar considerations would induce him to prefer the remedy of *replevin* to an action of trespass; for it relieves him from risk and responsibility.

The loose *dicta*, and the apparent contradiction and confusion of ideas, in many of the reported cases, on this point, have arisen from the want of precision of language, or the misapplication of the phrase, that " goods cannot be taken from the custody of the law." Sir *Edward Coke* says, " a *replegiare* lyeth where goods are distrained:" (*Co. Litt.* 145 *b.*) thus giving an *example* for a *definition*; and even the learned and discriminating Sir *William Blackstone*, was led into the error, that *replevin* lies " only in one instance of an unlawful taking, that of a wrongful distress." (3 *Black. Com.* 146.) Baron *Gilbert* says, " A replevin is a judicial writ to the Sheriff, complaining of an unjust taking and detention of goods and chattels." (*Gilb. Replev.* 58.) In *Baker* v. *Fales*, (16 *Mass. Rep.* 147.) it was held, that replevin lies for a wrongful *detention* of goods, although the original taking was justifiable. In *Shannon* v. *Shannon*, (1 *Sch. & Lefroy*, 324.) Lord *Redesdale* holds, that there must be an *unlawful taking from the possession of the plaintiff*, to maintain *replevin*. But the question is, what is meant by the *possession* in such case? I understand by it, not only the *actual*, but the *constructive* possession of the owner; and, by a *constructive possession*, I mean a right to reduce the chattel to immediate possession. If the plaintiff in replevin shows a possession in himself, or his bailiff, the law then casts the *onus probandi* on the defendant, as to property.

In the case of *Thompson* v. *Button*, (14 *Johns. Rep.* 84.) Chief Justice *Thompson* said, " as a general principle, it is undoubtedly true, that goods taken in execution, are in the custody of the law; and it would be repugnant to sound principles, to permit them to be taken out of such custody, when an officer has found them in, and taken them out of the possession of the defendant in the execution." But, in that case, the goods were taken while in the possession of the plaintiff in replevin, who was *not defendant* in the execu-

tion : and the general rule, as laid down by the Chief Jus-
tice, had no necessary application to the case.

In the case of *Gardner* v. *Campbell*, (15 *Johns. Rep.*
401.) this Court recognised the rule as laid down in
*Thompson* v. *Button*, and gave it its proper application;
that is, to a case where the *defendant in the execution*
brought *replevin* against the officer ; and it was held not
to lie.

In *Thompson* v. *Button*, Ch. J. *Thompson* also remarked,
that " the utmost extent to which the case of *Pangburn* v.
*Patridge* can be carried, is to permit *replevin* to lie, where
an action of *trespass* might be brought." That is precisely
the extent to which I would carry it ; and the ancient au-
thorities sanction the doctrine to that extent. (2 *Edwd.*
IV. 16. *Danby*, J. *Winch*, 26. *Plowd.* 281.) The ge-
neral rule is, that the plaintiff in replevin must have a *gene-
ral* or *special property* in him at the time of the unlawful
taking of which he complains ; that is, he must have either
the *actual possession*, or the *right of reducing it to his ac-
tual possession*, at the time of the tortious taking. Sir *Ed-
ward Coke* says, " it is a general rule, that the plaintiff
must have the property of the goods in him at the time of
the taking. But, yet, if the goods of a villeine be distrain-
ed, the lord of the villeine shall have a replevy ; because,
the bringing of a replevy amounts to a claim in law, and
vests the property in the plaintiff." (*Co. Litt.* 145 *b.*)
*Bacon* says, " not only a general property, which every
owner has, but also a special property, such as a person
has who has goods pledged to him, &c., is sufficient to
maintain a replevin ; and in such like cases, *either party may
bring a replevin*." (*Bac. Abr.* tit. *Replevin and Avowry*,
F. by *Gwillim.*)

In the case now before us, the plaintiff in the replevin had
not only a general and absolute *property* in the goods at the
time of the seizure, but, in my judgment, he had not even
parted with the actual *possession* of them. The testimony
of *John Clark*, the only witness on that point, is, " that at
the time of the levy and seizure by *Skinner*, he (the witness)
came to *Waterloo*, on business for his son, (the plaintiff,)
and had the plaintiff's horse, cutter, and harness ; and drove

them under a shed, and went to Mr. *Slack's* for boot-binding for his son," (the plaintiff,) and while so under the shed, the defendant seized the horse, &c. on the *fi. fa.* against *John Clark.* There was no lending, nor letting for hire, nor any kind of bailment of the chattels to *John Clark.* He was not only in the use of the plaintiff's property, but he was using it in the business and employment of the plaintiff, at the time of the levy. Suppose a *fi. fa.* against a labourer, who is employed by me to plough my land with my horses ; or against a *stage driver* on the highway, can it be contended, that the horses at the plough, or the post-coach on the highway, are not in the *actual possession* of the proprietors ? Or, if, intrusting a chattel to a servant, to be used in the business and employment of the owner, be, in any sense, a *bailment*, can the doctrine be endured, that it cannot be replevied by the owner, if taken on an execution against the servant, while so using it ?

If goods be taken on *fi. fa.* as the property of the defendant named in the execution, and the writ is from a Court of competent jurisdiction, and not void for any defect on its face, the officer, as against such defendant, is never a trespasser, nor a wrong doer. As to such defendant, the property is in the *custody of the law*, and he is concluded by the judgment against him. To allow *him* to question the validity of the seizure, in an action of *replevin*, would, indeed, be against public policy ; for it would be moving in a circle, and the creditor would never receive the fruits of his execution. But such reasoning has no application to the rights of a *stranger*, whose property has been wrongfully taken on an execution against another person.

In *Rex* v. *Monkhouse*, (2 *Stra.* 1184. and note, 3d *Ed.*) the Court granted an attachment against the Sheriff, for granting a replevin of goods distrained on a conviction of deer-stealing ; and " the ground of the decision was, that the conviction was conclusive, and its legality could not be questioned in a replevin." So, in *Win* v. *Forster*, (*Lutw.* 1191.) *Aylesbury* v. *Harvey*, (3 *Lev.* 204.) *Rex* v. *Burchett*, (*Stra.* 567.) and in every adjudged case that I have found, where it has been held, that " *goods taken in execution*," or " *goods in the custody of the law*," could

not be replevied, that doctrine has been applied to cases where the *defendant in the execution* was plaintiff in the replevin, and to none other.

I admit that the judgment in this case against *John Clark* is conclusive; and the execution against him cannot be questioned in a replevin *by him.* But where a *stranger* to that judgment and execution brings replevin, it is not to question or overhale those proceedings, but to obtain redress for a *trespass* done to him; the judgment and execution set out in the avowry, are *res inter alios,* and cannot affect his rights, or his remedies.

I am, accordingly, of opinion, that the Judge ruled correctly at the trial, and that the plaintiff is entitled to judgment.

SPENCER, Ch. J., and WOODWORTH, J., were, also, in favour of the plaintiff; but they rested their decision solely on the ground that the chattels were, in this case, to be deemed as taken from the actual possession of the plaintiff, who was not the defendant in the execution.

Judgment for the plaintiff.