LUTHER ,H. TYSON, ADMINISTRATOR OF THE ESTATE OF LUTHER TYSON, DEC'D, APPELLANT, *vs.* URIAH BOWDEN, APPELLEE.

A defendant in execution, after judgment in replevin, cannot sue out another writ of replevin to prevent the execution of the writ against himself and procure a restoration of the property. The Court, on application, will supersede the writ if not returned, or set it aside as irregularly issued if it be returned.

This case was decided at Jacksonville.

This was an action of replevin instituted in Duval Circuit Court.

The appellee, as sheriff of Duval county, having in hand a writ of *retorno habendo*, directed to the sheriffs of the State of Florida, issued from Leon Circuit Court under a judgment of said Court in favor of Daniel T. Lingo against the appellant, in his individual capacity, seized eleven slaves, in compliance with the command of said writ.

The appellant, as administrator of the estate of Luther Tison, dec'd, instituted his action of replevin against the appellee to recover said slaves. At the first term of the Court thereafter, Bowden, the defendant below, by his counsel, moved to dismiss the suit, on the ground that the writ was improperly issued. On the hearing of the motion, the writ of *retorno habendo* was read in its support, and it was admitted that the slaves for whose recovery this action was brought are the same slaves which were seized by Bowden, as sheriff of Duval county, by virtue of the aforesaid writ.

The Court below dismissed the suit, on the ground that

the action of replevin did not lie in such a case, and the plaintiff appealed.

*P. Fraser* for appellant:

It will be contended by the appellant, that it appears by the record that Luther H. Tison, administrator of Luther Tison, deceased, is a distinct and different person from the Luther Tison named in the writ of return, and that their rights to the property in dispute stand upon a distinct and different basis, to be established by evidence to be adduced on the trial of proper issues to be joined in the cause; that under the replevin act of this State the action of replevin will lie in all cases which do not come within the exceptions named in the act itself:

1st. The action will lie in all cases where goods and chattels are wrongfully taken or detained.

2d. It will lie at the suit of a defendant in execution or attachment when the goods and chattels seized by virtue thereof are exempted by law from such execution or attachment.

3d. It will lie at the suit of any other person than such defendant, when such person has the right to reduce into his possession the goods so taken.—Thomp. Dig., 388.

There are but three exceptions in the act:

1st. Where property is taken by virtue of any warrant for the collection of any tax, assessment or fine, in pursuance of any statute of this State.

2d. Where goods taken by virtue of any execution or attachment are not exempted by law.

3d. Where a third party claiming goods so taken has not the right to reduce them to his possession.

The action of replevin will therefore lie in all other cases, as the mention of these exceptions is the exclusion of all others.

There is no conflict of jurisdiction between the Circuit Courts of Duval and Leon counties, such as would arise between a State Court and a Federal Court:

1st. Because the Courts of the United States have exclusive jurisdiction of all seizures, and any intervention of a State authority which, by taking the thing seized out of the hands of the United States officer, might obstruct the exercise of this jurisdiction, is unlawful.—4 Cond. R., 2 Wheaton, 1.

2d. But a State Court has no such exclusive jurisdiction. By the terms of the replevin act, a defendant in execution may replevy goods taken in execution which are exempt by law, and such goods must be replevied by a writ issuing from the Court within the jurisdiction of which the goods are found, whether it be within the jurisdiction of the Court issuing the writ or that of some other Court. A Justice of the Peace may issue a replevin for goods taken in execution issuing from a Circuit Court, if such goods are exempt from execution by law, and he has jurisdiction of the amount; or, a replevin may issue from the same Court out of which the execution issued, or from another Circuit Court of the State, if the property be found within its jurisdictional limits. Also a third party may have replevin for any goods seized by virtue of an execution, where he is entitled to the possession. His affidavit is *prima facie* evidence of title, and he has a right to try that issue by a jury.—George vs. Chambers, 11 M. & W., 159 and note; Denham vs. Wyckoff, 3 Wend., 281.

Where goods taken in execution are illegally replevied, the Court will not dismiss the replevin, but will attach the party for a contempt.—11 M. & W., 159 and note. And the cases all agree in applying this rule where the plain-

tiff in replevin is defendant in execution, and not when a third party brings the replevin.

*Hilton & Fleming* for appellee:

The first section of the act of February 10, 1832, (Thomp. Dig., p. 387,) defines the scope of the action of replevin. Its two alternatives—"goods or chattels wrongfully *taken*" and "goods or chattels wrongfully *detained*"—embrace *every case* in which this form of proceeding can be maintained. Has another wrongfully *taken* your slave?—then you may sue for him in replevin; or, does he wrongfully *detain* him (however taken)—you have the same remedy. But, unless *either* wrongfully taken *or* wrongfully detained, he may not lawfully be replevied. If these positions are well taken—and we hold them to be absolutely impregnable—it is impossible to show that the Court below erred in dismissing this case.

How were the slaves in question "taken" by Bowden? We answer, under and by virtue of a writ issued out of the Circuit Court for Leon county, commanding him to take them, (*them and none others*,) designating them by name. It is admitted that the slaves now in controversy are the identical slaves which the State of Florida, speaking through this writ, commanded and enjoined Uriah Bowden to take into his possession. Then, can it be pretended that they were "wrongfully taken?" There was no mistake, such as sometimes occurs in executing a *fieri facias*, when a levy is made upon one man's property to pay another man's debts. In taking these slaves the sheriff did his duty—no more, no less. They were rightfully, not "wrongfully taken." We conclude, then, that replevin in the *cepit*, at all events, did not lie for their "recovery."

But, were they wrongfully *detained* by the sheriff at the

time of their replevy by Luther H. Tison, administrator of his father? Assuredly not. He detained them by virtue of the same authority and in obedience to the same command by which he took them. We care not how good may be the title of Luther H. Tison, administrator, to this property—so soon as it was *rightfully* taken by an officer of the Court, in compliance with its writ, *it was in the custody of the law.* And, if any principle of law is settled, it is that property thus placed cannot be rightfully replevied. "As a general principle," (say the Supreme Court of New York in Thompson vs. Button, 14 Johns., p. 87,) "it is *undoubtedly* true that goods taken in execution *are in the custody of the law*, and it would be repugnant to sound principles to permit them to be taken out of such custody, when an officer has found them and taken them out of the possession of the defendant in the execution," &c., &c. And, in accordance with this principle, the same Court, in Gardner vs. Campbell, (15 Johns., 403,) decided that this action could not be maintained to recover chattels levied upon by the sheriff, even though *after the levy* the amount due on the execution had been paid—Spencer, J., deciding that the party must seek redress in a different form of action. "The goods (said he) were lawfully taken by the defendant, and *replevin* is not the appropriate remedy."

By a peculiar process of reasoning, it is contended, that though the 1st section may not, the 3rd section of the act of March 11, 1845, does sanction these proceedings. It is asserted, that the latter section, though it prohibits Luther Tison, the defendant in the execution, (in this case a writ of *retorno habendo*,) from bringing this action, does not prohibit, indeed authorizes, Luther H. Tison, *administrator*, to bring it. To which we reply: Whatever be the

9

exact meaning of this section, it is clear that it does not *extend*, nor was it intended to extend, the privileges given by the first. On the contrary, its purpose was manifestly to *limit* those privileges. If, then, as we have shown, the first section does not authorize this suit, much less can the second, which is still farther restrictive, do it. But granting, for the sake of argument, the *first* clause of the third section is not prohibitory as regards Luther H. Tison, *administrator*, how will the plaintiff in appeal dispose of the last clause? The first clause says, "No replevin shall lie at the suit of the defendant in any execution to recover goods or chattels seized by virtue thereof." But stop, say our opponents; Luther H. Tison, *administrator*, is not the defendant in execution. Very well; but we read further, "Nor shall a replevin lie for such goods or chattels at the suit *of any other person*, unless *he shall have a right to reduce into his possession the goods taken.*" We have already shown that these slaves, being from the time of their rightful seizure by the sheriff in the *custody of the law*, no one, neither Luther H. Tyson, nor Luther H. Tison, *adm'r*, nor any other person, had the right to reduce them into his possession. Neither, then, did a replevin lie at the suit of Luther H. Tison for the detention of these slaves, "nor at the suit of any other person." We conclude, then, that replevin in the *detinet* against Bowden, rests upon as little authority of law or reason as replevin in the *cepit.*— See Pangbum vs. Pattridge, 7 John., 142; also 14 John., 84, and 20 John., 470.

The consequences of an adverse ruling would be:

1st. A conflict of jurisdiction immediately and necessarily between the Middle and the Eastern Circuit Courts.

2d. Injury to the rights of Daniel T. Lingo, who is not a party to this proceeding.

3d. As to the liabilities of Uriah Bowden, sheriff and

defendant in this cause—He has done nothing but his duty; and yet, if this suit may be prosecuted and the plaintiff recovers, judgment will necessarily go against the sheriff for both damages and costs. Thomp. Dig., 390, sec. 3-; Phillips vs. Harris, 3 J. J. Marshall, 121; Hopkins & Moody vs. Burney, 2 Florida, 43.

4th. As to the liabilities of Luther H. Tison's bondsmen in the original suit—True these slaves have been placed in the hands of the sheriff partly through their agency, but, should the judgment below be overruled and Tison, as administrator, finally recover, those sureties will be still liable. In a suit on a replevin bond, the Sup. Court of New York (Gould vs. Warner, 3 Wend., 54,) say:

"A return of the goods to the sheriff is no answer to the action. The return required by the bond is a return to the party from whom they were taken, in pursuance of the judgment of the Court, not a mere re-delivery to the sheriff."

PEARSON, J., delivered the opinion of the Court.

This was an action of replevin brought by Luther H. Tison, administrator of Luther Tison, deceased, for the recovery of eleven slaves named in the writ. At the first term of the Court after the commencement of the action, the defendant by his counsel moved that the same be dismissed. At the hearing of said motion, a writ of *retorno habendo* issued from the Circuit Court of Leon county in favor of Daniel Lingo, under a judgment of said Court against Luther H. Tison in his individual capacity, was read in support of the same. It was admitted that the slaves for whose recovery this suit was commenced in Duval county, are the same eleven slaves which were seized by Uriah Bowden, sheriff, by virtue of the aforesaid writ, issued to him as one of the sheriffs of the State of Florida

from the Circuit Court of Leon county. On argument of the motion, the Court below dismissed the suit, on the ground that the action of replevin will not lie in such a case. Thereupon an appeal was taken to this Court.

For the appellant, it has been contended that Luther H. Tison, administrator of Luther Tison, deceased, is a distinct and different person in law from Luther H. Tison named in the writ of return, and that, under the replevin act of Florida, the action of replevin will lie in all cases which do not come within the exceptions named in the act itself, and that the facts do not bring this case within the exceptions.

On the other hand, it is maintained that every case of replevin is embraced in the alternative, first, when goods or chattels shall have been wrongfully taken ; "second, when goods or chattels shall be wrongfully detained," and that the slaves in question being taken under a legal precept designating them by name, sex and age, and, when detained, being in the custody of the law, this case comes under neither of these alternatives.

"Whenever any goods or chattels shall have been wrongfully taken, or shall be wrongfully detained, an action of replevin may be brought for the recovery thereof and for the recovery of the damages sustained by reason of such wrongful caption or detention in the Circuit Court or other Court having jurisdiction in the county in which such property may be found."

The difficulty which presents itself at the threshhold, as regards the claim of the appellant to bring this action is, that we are not able to perceive how it can be that the slaves were either wrongfully taken "or wrongfully detained" by the sheriff. The evidence is that they were taken by the sheriff in his official capacity, in fulfillment of the exigencies of the writ, commanding him in the name of

Tison, Adm'r. vs. Bowden.—Opinion of Court.

the State to take these specific slaves and cause them to be returned to Daniel T. Lingo. The admission that the slaves sued for in this action are the slaves mentioned in Lingo's writ of *retorno habendo*, is an admission that they were *not* "wrongfully taken" by the appellee. Nor can we decide that they were wrongfully detained by him when replevied out of the sheriff's hands. They were *in transitu* for delivery to Lingo, to whom they had been adjudged by the Circuit Court of Leon county. In the hands of an officer of the Court, by a rightful taking, *they were in the custody of the law*—a sufficient answer to the allegation that they were *wrongfully detained*.

But it is contended that the facts of this case do not bring it within either of the exceptions mentioned in the 2d and 3d articles of the 1st section of the act, and that the "mention of these exceptions is an exclusion of all others." We apprehend, however, that it does come within the inhibition laid down in the comprehensive clause with which article third concludes. That clause is as follows: "Nor shall a replevin lie for such goods or chattels at the suit of any other person, unless he shall have the right to reduce into his possession the goods taken." If, as it appears to the Court, these slaves, when seized by the sheriff, passed into the custody of the law, then neither the defendant in the execution *nor any other person*, had a right to reduce them into his possession; and, wanting this "right," the plaintiff cannot claim the benefit of either of the exceptions set up in his behalf. Besides, as it has been argued by the opposite counsel, articles 2 and 3 were rather designed to limit and restrain than to extend the privileges given by article 1st. If, then, the latter does not sanction this suit, much less can either of the former.

Our attention has been called to several cases reported, where the action of replevin has been sustained against

the sheriff to recover property levied upon by that officer in virtue of executions placed in his hands. We apprehend that, on examination, all such cases will be found to be cases where the property levied upon was not subject to the execution, and in this respect distinguishable from the cause now before the Court. *Here* the slaves seized by the sheriff were subject to the officer's writ, and none others, and were rightfully taken by him.

Were authorities necessary to show that goods, when law and become *irrepleviable*, several might be cited from "*rightfully*" taken by the sheriff, go into the custody of the the adjudications of the New York Courts upon their statute, of which ours is in the main a copy. In the case of Thompson vs. Button, (14 Johns., 84,) the Chief Justice, in declaring the opinion, said :

" As a general principle, it is undoubtedly true that goods taken in execution are in the custody of the law, and it would be repugnant to sound principles to permit them to be taken out of such custody, when an officer has found them in and taken them out of the possession of the defendant in the execution."

True, the same court in Clark vs. Skinner, (20 Johns. 468,) denies or limits the assertion of Comyns' Digest, that " replevin does not lie for goods taken in execution ;" yet, to what extent ?  " 'By goods taken in execution,' I understand, (says the Judge,) goods *rightfully taken*, in obediance to the writ, but if through design or mistake the officer takes goods which are not the property of the defendant in the execution, he is a trespasser, and such goods never were ' taken in execution' in the true sense of the rule laid down by Baron Comyns." The rule thus limited is quite broad enough to cover the present cause.

A still stronger case is that of Gardner vs. Campbell, (15 Johns. 401,) in which it was held that " replevin will not

lie against an officer who, having levied upon and taken goods in execution, receives from the defendant the amount due on the execution, and then refuses to re-deliver the goods." In delivering the opinion of the court, Spencer, J., said:

" The conclusive objection to all the pleas is that, confessedly, the defendant (the sheriff,) took the plaintiff's goods under and by virtue of the process of the Court, and they are, in the language of this court in Thompson vs. Button, in the custody of the law, and it would be repugnant to sound principles to allow them to be taken out of such custody, when the officer has seized them in obedience to the exigency of the writ in his hands. The pretence set up is that the execution was paid and satisfied ; whether it was or not makes no difference in the principle. If the fact be true, the plaintiff is not without his redress. He cannot be allowed to set up that fact to divest the sheriff's possession. The goods were lawfully taken by the defendant, and replevin is not the appropriate remedy."

The consequences likely to spring from a different ruling, are well worthy of consideration. Among these may be mentioned (as has been suggested,) a conflict between the jurisdiction of the circuit courts of Middle and East Florida ; the exposure of the sheriff and his securities to a judgment of damages and costs for acts performed in the plain discharge of his duty ; the exposure of Lingo to a loss of property by the results of litigation to which he is not a party ; and finally, a harrassment of the original securities of Luther H. Tison by a suit on his replevin bond, from which it is by no means certain that they could escape or be discharged by any judgment rendered in this cause.

The cases we have referred to are of execution for debt,

&c. Had they been of positive command to the sheriff for the delivery of property by plaintiff to defendant, after trial and solemn adjudication, we can easily imagine that the language of those enlightened courts would have been far more peremptory and decided, as they unquestionably should be on every principle of right reason.

To allow a defendant in such an execution, not only to defeat it, but reverse its action and have property ordered to be delivered by him to plaintiff restored and returned, and that through process used to commence a suit, would be unheard of. It would be changing the practice of the court in a very material respect, by giving superior efficacy and force to the institution and commencement of a suit over its end and termination. The case of Morris vs. DeWitt resembles this in some degree, decided by the Court of Appeals of New York. There a quantity of iron ore was delivered to one of the parties on a writ of replevin, the other party sued out other writs by which it was re-delivered, and a motion was made to quash the last writs. The court say, " the law has provided guards against abuses in practice under the writ of replevin. By the revised statutes, not only a bond with sufficient security must be given, but the plaintiff must make affidavit of his title to the property replevied. The defendant may have the question of property tried before the officer making replevin, and even after verdict against him, the plaintiff may still claim deliverance of the property by giving further security. Now all this is a very useless proceeding if the defendant in replevin can turn round and bring his action of replevin, and thus regain possession of the property which has been legally taken from him. If such a proceeding were permitted, there would be no end to suits, and the benefit of this action could never be realized. The writs, however, cannot be set aside as irregularly issued, for they are not re-

turned, but they may be superseded and a rule for that purpose is granted."—5 Wend. 712.

The writ here will be set aside. Such indeed we regard as the practical effect of the dismissal of the case, so that the process from Leon Circuit Court will proceed undisturbed.

Let the judgment of the court below be affirmed with costs.