Peok, J.
The first error relied on for reversal of the judgment, is “ The overruling of the motion of the plaintiffs in. error, to substitute Jaffray & Sons as defendants below.”
The application was made under section 44 of the code, which reads as follows:
“ Sec. 44. In an action against the sheriff, or other officer, for the recovery of property taken under execution, and replevied by the plaintiff in such action, the court may, upon application of the defendant and of the party in whose favor the execution issued, permit the latter to be substituted as-the defendant, security for the costs being given.”
This section authorizes substitution only in cases where the-' property replevied was “taken under execution,” and in which the application is made by “ the defendant and the-party in whose favor the execution issued.” These two requisites were, perhaps, substantially complied with in the present case, under the liberal construction enjoined by the-second section of the code.
*194 In Ward & Co. v. Howard et al., decided during the present term, it is held, that an order of attachment is in the nature of an execution, before judgment, levied upon property, to satisfy it when rendered; and the application, though made in ihe first instance, solely by the officers, was sanctioned by jaffray & Sons before it was acted on by the court. It was not, however, accompanied by any offer to give security for costs, without which, it could not, by the terms of the section, have been granted.
It may also be doubted, if a marshal of the United States is one of the “ officers ” alluded to in this section and protected by its provisions; especially, where the application is made for the avowed purpose of depriving the court of a jurisdiction lawfully acquired. The section evidently contemplates, that the action is to proceed to final determination, in the court in which it was then pending, and to that end, requires the substituted party to submit himself to its jurisdiction and give security for costs.
The words in this section, authorizing the substitution, are, in form, permissive and not mandatory; conferring a discretionary power, rather than enunciating a command. This form of expression, when used in a statute, is not, necessarily, decisive of its character, as the word may, when employed in a statute, is oftentimes to be read shall.
In Schuyler Co. v. Mercer Co., 5 Cowen, 24, the rule on this subject is said to be, “that the word may means must or shall only, in cases where the public interests or rights are concerned, and where the public or third persons have a claim de jure that the power shall be exercised.”
In this case it will hardly be insisted, that the officer, who was guilty of a trespass upon a third person, under color of his office, has a right de jure to be exempted from all responsibility; and it would seem to follow, that the permissive words used in that section, confer upon the court a sound legal discretion, to grant or refuse the application.
The section authorizes such substitution, upon giving security for costs merely, leaving the damage, if any, to depend upon the sole responsibility of the substituted defendant. Its *195 application to a case, like the present, would be manifestly Unjust; and in the exercise of a sound discretion, should have been refused. The action was instituted to recover the property replevied, and also damages for its detention, which damages, as found by the court, amounted to $834 94. Now if the officers could evade altogether this latter responsibility, and devolve it upon non-resident and possibly insolvent defendants, who had given no security for its payment, great injustice might ensue.
Again, it is the duty of a court to maintain and uphold jurisdiction when once lawfully acquired; but the avowed object of the application was, to deprive it of a jurisdiction rightfully invoked by a citizen of the state, against other citi zens of the same state.
We are therefore clearly of opinion, that there was no error in the refusal to substitute Jaffray & Sons as defendants in said replevin suit.
As to the second error assigned, we have to observe, that the suit sought to be removed, is not within the purview of the judiciary act of 1789 (Brightly’s Dig. 128); for the very plain reason, that it is not a suit commenced in a state court, ly a citizen of one state against the citizen of another state, but a suit between citizens of the same state. The marshal and his deputies .were not, in any just sense, merely nominal parties; and the case is not, therefore, like the one cited from 14 Howard, 586, in which a marshal of the state of Wisconsin, brought suit in the district court of that state, against other citizens of the same state, but for the use of non-resident plaintiffs in attachment, upon a bond given to him in his official character for their use, and in which it was held, that the marshal might sue in the district court for the use of the beneficiaries named in the bond, who were residents of another state. The marshal, in the present case, had seized the property of Beaty under process of attachment against Curtis, and was therefore a trespasser and liable therefor, as well as for damages for their detention; and these damages, as the finding of the court shows, were real and serious in amount, and not merely nominal.
*196 Again, no cause is removable from a state court, under the judiciary act of 1789, unless it might have been commenced originally between the parties, in the circuit court. Smith v. Reeves, 2 Sumner, 338. It is clear, we think, that this suit could not have been commenced by the plaintiff against the marshal and his deputies, in the circuit court of the United States, all being citizens of the same state, and all being real parties to the controversy, and we think there was no error in refusing to certify the cause.
Lastly, it is assigned for error, that “ the court of common pleas erred in exercising jurisdiction against officers of the-United States, in such manner as to deprive them of the custody of property held under process from a federal court.”
The question presented by this assignment is one of some delicacy as well as embarrassment.
The property of the plaintiff was wrongfully taken and detained from him by the defendants. He brought an action, under the express provisions of the code, to recover the property so taken and detained, together with damages for its detention, against the wrongdoers. On the hearing of the cause, it is ascertained that the defendants, being a marshal and his deputy marshals, for the southern district 'of Ohio, acting under an order of attachment, issued out of the circuit court of the United States for the said southern district, against the property of a third person, had seized the goods of the plaintiff; and when served with the order for delivery in this cause, still held said goods under and by virtue of said order of attachment, and it is claimed, that the court below, on ascertaining these facts, should have found for the defendants, remitting the plaintiff to the remedies remaining to him in said circuit court, on the ground, that the property, in legal contemplation, was then in the custody of the circuit court, and could not be taken from its officers, upon process issued by another judicial tribunal.
The defendants, certainly, derived no authority to take the goods of Beaty, from the process against the goods of Curtis. They, in so doing, became trespassers, and might lawfully *197 have been resisted. They were ordered to seize the goods of C., but no others, and how can the goods of B., when thus taken, without warrant, be said to be in custodia legist
“ Where goods are taken by an abuse of authority (as taking the goods of A. upon an execution against B.), they are not in the custody of the law.” Bruen v. Ogden, 6 Halst. 375. “ Such goods never were taken in execution, in the true sense of the rule laid down by Comyn.” Clark v. Skinner, 20 Johns. 468; S. P. Thompson v. Button, 1 Johns. 83. In Clark v. Skinner, supra, Platt, J., after a Very elaborate review of the authorities, says, “in every adjudged case that I have found, where it has been held that ‘goods taken in execution,’ or goods in the custody of the law ’ could not be replevied, that doctrine has been applied to cases where the defendant in the execution was plaintiff ,in the replevin, and to none other.”
The cases cited from Johnson, were cases in which the property of one person had been taken upon execution against the goods of another on judgments before justices of the peace, and in which, the plaintiffs had replevied the property in the superior courts, from the constables levying the executions, and indicate, very clearly, that property seized in execution, is not to be regarded as in the custody of the court issuing the execution, when the property does not belong to the defendant, but to a third person.1
The case cited from Halsted closely resembles the' one under consideration. It was a case, in which a marshal of the United States, by virtue of a fi.fa., issued out of a district court of the United States against A. B. and 0., upon a judgment in favor of the United States against them, seizes upon the property of T>., and in which the court, per Ewing, C. J., delivered a very elaborate opinion, holding that replevin might be maintained by D. against the marshal in a state court, even though the marshal acted under the direction of the district attorney of the United States in seizing the property. The chief justice in that opinion, examines and refutes the objections arising out of apprehended conflicts of jurisdiction between the courts of the United States and those of< *198 the state, and holds that property seized under such circumstances, is not in the custody of the law or of the court, but in that ofa wrongdoer, who is unprotected by the process he has abused and amenable to. the owner as a trespasser.
The counsel for the plaintiff in error refer us to the cases of Taylor et al. v. Carryl, 20 How. 588, and Keating v. Spink, 8 Ohio St. Rep. 105, as requiring the court below, upon the facts found, to render a verdict and judgment for the defendant.
The case in Howard is one in which the state court acquired jurisdiction over the vessel by its seizure in attachment before its seizure by the marshal. It was the property of the defendant in the attachment and not of a third person. Its seizure under process against the defendant, conferred jurisdiction upon the state court to subject Ms interest therein to the payment of the debt due his creditor. Such being the facts, the settled principle, “that among equal or concurrent jurisdictions, that is exclusive, which first at-' tached,” was very properly applied. See same case in 12 Harris’ Penn. Rep. 259.
If the attachment had been for an indebtedness, other than ■that of the owner, it would have been applicable to the case ‘under consideration; but we apprehend the court, in Pennsylvania, upon such facts, would not have claimed, and the United States court would not have conceded, the prior jurisdiction.
The same remarks may be made and the same principle •applied,, in the case in 3 Ohio St. Reports. That was a proceeding in rem, against a steamboat by name, under our ■watercraft law, and in which the state court acquired prior jurisdiction by the earliest seizure of the boat.
The cases in which such collisions have occurred, are either proceedings strictly in rem, where the res and not its ownership is in controversy, or seizures upon execution or in attachment for the debts of the owner, and where the process seeks to subject Ms interest therein, and cases where the possession and management of specific real or personal property, has been delegated by a court to its receiver; and in all these *199 cases the maxim before alluded to has been applied; hut it will be seen, at a glance, that an unlawful effort to subject the property of B. to the payment of the debts of C., does not fall within either class.
In sustaining a recovery in the present action, we do not, in any just sense, interfere with any jurisdiction of the circuit court, acquired by the issuance and pretended service of the orders in attachment. The process authorized the marshal to seize the property of C. only. The seizure of B.’s property under that process was illegal. It was outside of and wholly independent of the authority under which the marshal was acting or pretending to act.
How can the replevy of B/s goods, thus wrongfully seized, be said to conflict with the process or acquired jurisdiction, of the circuit court ? It does not conflict with the process. The process was against the property of 0., the replevy is for the goods of B. Process against the goods of C. is no process against the goods of B. It does not conflict with any jurisdiction which the service of that process conferred upon the circuit court. A seizure of the goods of B. on a process solely against the goods of C., confers no jurisdiction on the court over the goods of B., any more than the arrest of B. on a process against C. would confer jurisdiction against the person of B. And in such case it will not be pretended, that a state court could not liberate the person, thus illegally deprived of his liberty, on habeas corpus, without any infringement of the jurisdiction of the circuit court.
It is apparent, then, that the goods of B., taken without the authority of law or process of the court, were not in custody of the law or of the court, but in that of a wrongdoer; and while we admit it to be the duty of a court, in the exercise of its jurisdiction, to avoid, if possible, all conflict with other judicial tribunals and the jurisdiction acquired by them we think it plain, that there is no such conflict of jurisdictions actually acquired, in the case under consideration.
If the circuit court could rightfully interpose to protect its officer who should thus abuse its process, and prevent the person injured from seeking redress in the state courts, which *200 we in nowise admit, it is not to be presumed, that that court would do so. The English court of chancery from which the right, if it exists, is borrowed, would, it seems, refuse to exercise the right under such circumstances. In Aston v. Heron, 2 Mylne and Keene, 390, the lord chancellor, while asserting the right as belonging to that tribunal, says : “ But where the process has been irregularly, that is, illegally used — -where it has been made the pretext for doing wrong, no considerations either of principle or of practical convenience, can require that the court should, in every case, draw to itself the examination of the matter, prevent all other tribunals from punishing the, wrongdoer, and exclude the injured party from access to all redress, save that which its own jurisdiction affords.” The learned chancellor then instances as such illegal use of process, the attaching the wrong party for a contempt, incarcerating him in the wrong prison, etc.
We do not suppose the circuit court, in such case, would consider its proper jurisdiction at all imperiled, or regard a jurisdiction, acquired by a trespass on the legal rights of thirds persons, as worthy of being defended and upheld.
Our duty, at all events, is clear. The marshal in seizing the goods of B. upon process against C., acted wholly without warrant or lawful authority, .and thereby became a trespasser, and amenable to the courts of the state in which the wrong was committed.
The judgment of the common pleas, upon the facts spread upon the record, was correct and is, therefore, affirmed.
Scott, C.J., and Sutliek, Gholson and Brinkerhorr, J J., concurred.